FILED
2025 Dec-16  AM 09:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 13

## FORBEARANCE AGREEMENT

**THIS FORBEARANCE AGREEMENT** ("Agreement") is made this __25__ day of June, 2024 (the "Effective Date"), by and among **CONTOUR BUCKINGHAM AL LLC**, a Delaware limited liability company (the "Borrower"), the parties signing this Agreement as guarantors (each a "Guarantor" and collectively, the "Guarantors"), and **WELLS FARGO BANK, NATIONAL ASSOCIATION** ("Bank").

### RECITALS

A.      Bank, Borrower and Guarantors are party to, among others, the documents as set forth on Exhibit A attached hereto and made a part hereof by this reference, all of which, as amended and modified from time to time, including as amended by this Agreement, are referred to collectively as the "Loan Documents". All amounts due to Bank under the Note and the Loan Documents, including costs and expenses, are referred to herein as the "Indebtedness". All duties and obligations of Borrower and Guarantors under the Loan Documents, including payment of the Indebtedness, are referred to herein as the "Obligations". Capitalized terms shall have the meanings as set forth in this Agreement, including Exhibit A, or if not defined herein, the meanings ascribed to such terms as in the Loan Documents.

B.      As of June 21, 2024, there was unpaid and owing under the Note, principal in the amount of $59,400,688.00, plus unpaid accrued interest, costs, expenses and attorneys' fees as provided under the Loan Documents and in connection with this Agreement.

C.      Borrower and Guarantors acknowledge that Events of Default have occurred under the Loan Documents as a result of Borrower's failure to (i) make the May 10, 2024 and June 10, 2024 scheduled monthly payments due under the Note, and (ii) maintain a Debt Service Coverage Ratio of not less than 1.25 to 1.00 as of the March 31, 2024 test date, all as specified in the Default Letter (collectively, the "Existing Defaults").

D.      Borrower and Guarantors reaffirm, ratify and confirm the Loan Documents and the Obligations as valid and binding. Borrower and Guarantors acknowledge that (i) Bank has duly performed all of its obligations under the Loan Documents, (ii) Bank has no obligation to lend or continue to lend to Borrower, and (iii) Bank has the right, without further notice, to enforce all of its rights and remedies under the Loan Documents and applicable law as a result of the Existing Defaults.

E.      As a result of the Existing Defaults, the Bank has elected to accelerate the Indebtedness, and the Borrower and Guarantors acknowledge that (i) the Indebtedness is hereby accelerated and is now due and owing to Bank in full from both the Borrower and Guarantors, without setoff, defense or counter-claim, in law or in equity, of any kind or nature, (ii) the Indebtedness is secured by (A) the "Collateral" as defined in the Security Agreement, which includes all personal property assets of the Borrower, and (B) the "Subject Property" as defined in the Mortgage encumbering the Property (collectively, the "Collateral"), and (iii) the Indebtedness is guaranteed by the Guarantors pursuant to their respective Guarantees.

F.      Borrower and Guarantors have requested, among other things, that the Bank temporarily forbear from exercising its immediate right to payment of the Indebtedness, to foreclose the Mortgage and/or to otherwise obtain possession of the Collateral, and the Bank has agreed to the foregoing request subject to the terms and conditions set forth in this Agreement.

**BASED UPON THE FOREGOING RECITALS** (which are incorporated as representations, warranties and covenants of the respective parties, as the case may be), and in consideration of the

agreements of the parties herein and other good and valuable consideration, the receipt and adequacy of which is acknowledged, the parties agree, in reliance on such recitals and consideration, as follows:

1.     **Forbearance**.  Bank agrees to forbear from enforcing its rights and remedies under the Loan Documents until the earlier to occur of (the "Termination Date"): (i) 5:00 p.m. on August 31, 2024 or (ii) the occurrence of a New Default. Such period from the Effective Date through the Termination Date shall be referred to herein as the "Forbearance Period".  Without limiting the generality of the foregoing, during the Forbearance Period, Bank will not (i) initiate proceedings for the collection of the Indebtedness; (ii) file or join in filing an involuntary petition in bankruptcy with respect to the Borrower, or otherwise initiate or participate in similar insolvency reorganization or moratorium proceedings for the benefit of creditors of Borrower or Guarantors; (iii) repossess or sell, through judicial proceedings or otherwise, any of the Collateral, or (iv) initiate proceedings to enforce the Guarantees.

2.     **Forbearance Terms**.  To induce Bank to enter into this Agreement, Borrower and Guarantors agree that the Loan Documents are hereby supplemented and modified as follows, which modifications shall supersede and prevail over any conflicting provision of the Loan Documents:

(a)     **Monthly Payments.**  No later than June 28, 2024, Borrower shall pay to the Bank the May 10, 2024 and June 10, 2024 scheduled monthly payments due under the Note that are currently delinquent and otherwise bring any amounts due or delinquent under the Note current.

(b)     **Operating Statements and Rent Rolls.** Within thirty (30) days after the end of each month, commencing with the month ending May 31, 2024, Borrower shall provide to Bank (i) the consolidated and consolidating operating statement of the Borrower and the Property, and (ii) a copy of the rent roll of the Property.

3.     **Collateral Security; Cash Management**.

(a)     Borrower and Guarantors hereby confirm and grant to Bank continuing perfected security interests in and mortgage liens on the Collateral as collateral security for the Obligations.

(b)     Borrower and Guarantors are reminded, and hereby confirm and agree, to maintain all of Borrower's primary deposit accounts and other traditional banking relationships with the Bank, which includes without limitation, directing all rents, payments and other amounts received from tenants of the Property or otherwise pertaining to the Property, solely to deposit accounts at the Bank.

4.     **Conditions Precedent**.  Borrower and Guarantors understand and agree that this Agreement shall not be effective and Bank shall have no obligation to forbear or to continue to forbear from exercising its rights and remedies under the Loan Documents unless and until each of the following conditions precedent has been satisfied or waived by Bank in its sole discretion, for whose sole benefit such conditions exist, with Bank's determination as to whether they have been timely satisfied being conclusive absent manifest error:

(a)     **Documents**.  Borrower and Guarantors shall have executed and delivered this Agreement and such other documents and instruments required by the Bank in connection with this Agreement, all in form and content acceptable to Bank in its sole discretion.

(b)     **Payments**.  Borrower shall have paid or have caused to be paid to Bank all fees and expenses paid or incurred by Lender in connection with this Agreement and the Loan Documents, including without limitation, attorneys' fees.

5.    **Waiver and Release of All Claims and Defenses**.  Borrower and Guarantors represent and warrant that they are not aware of any claims or causes of action against Bank or any of its affiliates, successors or assigns, and that they have no defenses, offsets or counterclaims with respect to the Obligations.  Notwithstanding this representation and as further consideration for the agreements and understandings herein, Borrower and Guarantors, on behalf of themselves and their respective employees, agents, executors, heirs, successors and assigns (the "Releasing Parties"), hereby release Bank and its predecessors, officers, directors, employees, agents, attorneys, affiliates, subsidiaries, successors and assigns (the "Released Parties"), from any liability, claim, right or cause of action which now exists or hereafter arises as a result of acts, omissions or events occurring on or prior to the date hereof, whether known or unknown, including but not limited to claims arising from or in any way related to this Agreement, the Loan Documents, all transactions relating to this Agreement or any of the Loan Documents or the business relationship, or any other transactions or dealings, among the Releasing Parties or any of them and the Released Parties or any of them.

6.    **Reaffirmation of Guarantees**.  Each Guarantor acknowledges and agrees to the continuing authenticity and enforceability of its respective Guaranty and ratifies and confirms its respective Guaranty in its entirety.  Each Guarantor acknowledges and agrees that the Guarantees secure and continue to secure the payment and/or satisfaction of all of the Obligations.  Guarantors confirm that each Guaranty shall remain in full force and effect until the Indebtedness is fully paid, all of Borrower's and Guarantors' obligations to Bank are fully satisfied and Borrower and Guarantors are discharged hereunder and under the Loan Documents.  As of the date hereof, Guarantors have no claims or defenses of any kind by way of offset or otherwise to their obligations under their respective Guaranty.  Guarantors waive any and all defenses arising by reason of (i) any and all amendments or modifications of any document, (ii) any and all alterations, accelerations, extensions or other changes in the time or decreases in the rate of performance, (iii) any and all increases or decreases in the rate of interest or other charges, (iv) the release, substitution or addition of any collateral, borrower, or guarantor, (v) any failure of Bank to give notice of default to any borrower or guarantor, (vi) any failure of Bank to pursue any borrower or guarantor or any property of any borrower or guarantor with due diligence, (vii) any failure of Bank to resort to collateral or remedies which may be available to it, and (viii) any and all defenses arising out of the guarantor-principal relationship, and the same shall not operate to release any guarantor hereunder.

7.    **No Course of Dealing**.  Borrower and Guarantors acknowledge, understand and agree that Bank is under no duty or obligation of any kind whatsoever to engage in discussions regarding, or to extend or grant to them, any additional period of forbearance after expiration of the Forbearance Period. No course of performance, course of dealing or trade usage is intended by, nor shall be deemed to have occurred, as a result of (i) the agreements of Bank as set forth herein; (ii) the failure of Bank to enforce any rights upon the occurrence of a New Default; (iii) the acceptance by Bank of any late payment or performance of any requirement herein; or (iv) any other act or omission by Bank.

8.    **Indebtedness Remains Due; No Waiver or Cure of the Existing Defaults**.  Borrower and Guarantors agree and acknowledge that (i) notwithstanding the current maturity date of the Note, the Indebtedness shall continue to be due and payable in full subject only to Bank's agreement to forbear until the Termination Date as set forth herein, at which point the Indebtedness shall be due and payable in full, and (ii) neither this Agreement nor any payment of the Indebtedness (other than payment in full) nor any act of Bank (other than in a writing expressly so stating) shall constitute a waiver or cure of the Existing Defaults.

9.    **Representations and Warranties**.  Borrower and Guarantors hereby represent and warrant to Bank as follows:

(a)    **Recitals**.  The Recitals in this Agreement are true and correct in all respects.

3

(b) **Representations Still True**. All representations and warranties of Borrower and Guarantors in the Loan Documents remain true, and the Borrower and Guarantors reaffirm such representations and warranties, in all respects as of the date hereof.

(c) **Organization Documents; No Ownership Changes**. Since September 30, 2022, there have been no amendments to the organizational or governing documents of the Borrower and there have been no changes in the ownership of the equity interests in the Borrower.

10. **New Default**. Upon the failure of Borrower to make any payment required hereunder on the due date, time being of the essence, or upon the occurrence of a default after the date hereof by Borrower or Guarantors for failure to strictly observe or perform under any provision of this Agreement or the Loan Documents ("New Default"), Bank's obligation to forbear shall terminate immediately without the requirement of any notice, and Bank may then proceed to exercise all of its legal rights and remedies under the Loan Documents, including, without limitation, an increase in the interest rate under the Note to the default rate.

11. **Miscellaneous Provisions**.

(a) **Implementation**. Borrower and Guarantors will execute and deliver, or cause to be executed and delivered, all documents and shall take, or cause to be taken, all steps deemed necessary by the Bank and its counsel to give effect to the terms and conditions of this Agreement and agree to provide hereafter such further documents and assurances as may be requested by the Bank, to carry out the intents and purposes hereof.

(b) **Survival**. All representations, warranties, covenants, agreements, undertakings, waivers and releases of Borrower and Guarantors contained herein shall survive the termination of the Forbearance Period and payment in full of the Indebtedness.

(c) **Integration**. This Agreement, together with the Loan Documents, constitutes the entire agreement and understanding among the parties relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings relating to such subject matter. In entering into this Agreement, Borrower and Guarantors acknowledge that they are relying on no statement, representation, warranty, covenant or agreement of any kind made by the Bank or any employee or agent of Bank, except for the agreements of Bank set forth herein.

(d) **Amendment**. No amendment, modification, rescission, waiver or release of any provision of this Agreement, nor any extension of the Forbearance Period, shall be effective unless the same shall be in writing and signed by the parties hereto.

(e) **Notices**. All notices or demands hereunder to parties hereto shall be sufficient if made in writing upon deposit in the mail, postage prepaid, and addressed to the parties respectively as set forth above or in the Loan Documents.

(f) **Governing Law**. This Agreement shall be governed by and construed in accordance with the internal substantive laws of the State of Michigan, without regard to the choice of law principles of such state.

(g) **Successors and Assigns**. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, and their respective successors, heirs (where appropriate), trustees and assigns; provided, however, that the foregoing shall not authorize any assignment by Borrower or

Guarantors of any rights or duties hereunder and no such assignment shall be permitted. Bank may assign its interest in this Agreement and the Loan Documents at any time.

(h)     **Voluntary and Informed Execution.** BORROWER AND GUARANTORS ACKNOWLEDGE THAT THEY HAVE HAD AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL WITH RESPECT TO THIS AGREEMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY, AND BORROWER AND GUARANTORS ACKNOWLEDGE AND AGREE THAT (I) EACH OF THE COVENANTS, WAIVERS AND RELEASES SET FORTH HEREIN WERE KNOWINGLY AND VOLUNTARILY MADE; (II) THE OBLIGATIONS OF BANK HEREUNDER SHALL BE STRICTLY CONSTRUED AND SHALL BE EXPRESSLY SUBJECT TO BORROWER'S AND GUARANTORS' COMPLIANCE IN ALL RESPECTS WITH THE TERMS AND CONDITIONS HEREBY SET FORTH; AND (III) NO REPRESENTATIVE OF BANK HAS WAIVED OR MODIFIED ANY OF THE PROVISIONS OF THIS AGREEMENT AS OF THE DATE HEREOF AND NO SUCH WAIVER OR MODIFICATION FOLLOWING THE DATE HEREOF SHALL BE EFFECTIVE UNLESS MADE IN ACCORDANCE WITH THIS AGREEMENT.

(i)     **Ratification of Loan Documents.** Except as expressly amended hereby, Borrower and Guarantors agree that the Loan Documents are ratified and confirmed and shall remain in full force and effect and that they have no set off, counterclaim, defense or other claim or dispute with respect to any of the foregoing. Borrower and Guarantors further acknowledge and agree that all Loan Documents to which they are a party secure all of the Obligations and all other obligations and liabilities described in such Loan Documents as secured.

(j)     **Performance.** Borrower and Guarantors acknowledge and agree that Bank has fully performed all of its obligations under all Loan Documents, and that all actions taken by Bank are reasonable and appropriate under the circumstances and within its rights under the Loan Documents.

(k)     **Counterparts; Facsimile Signatures.** This Agreement may be executed in one or more counterparts, all of which collectively shall constitute a single document; and, a facsimile signature shall be effective as an original signature.

(l)     **Waiver of Jury Trial.** EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS AGREEMENT, THE LOAN DOCUMENTS OR ANY OTHER DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS; IT BEING ACKNOWLEDGED AND AGREED THAT ANY ISSUES OF FACT IN ANY SUCH ACTION ARE MORE APPROPRIATELY DETERMINED BY THE COURTS. EACH PARTY HERETO FURTHER ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.

[SIGNATURES ON FOLLOWING PAGE]

5

**IN WITNESS WHEREOF**, the undersigned execute this Agreement effective the day and year first written above.

BORROWER:

**CONTOUR BUCKINGHAM AL LLC,**
a Delaware limited liability company

By:_____
      David Dedvukaj
Title:  Manager

GUARANTORS:

_____
David Dedvukaj, individually

_____
Joseph A. Nathan, individually and as Trustee of the
Joseph A. Nathan Living Trust Dated December 30, 1996

BANK:

**WELLS FARGO BANK, NATIONAL ASSOCIATION**

By:_____
      Matthew Henry
Title:  Vice President

6

**Exhibit A**
**to**
**Forbearance Agreement**

**List of Loan Documents**

The "Loan Documents" include the following (as each of the foregoing has been amended, restated, modified or otherwise supplemented from time to time), each dated as of September 30, 2022, unless otherwise specified:

1.     Credit Agreement between the Borrower and the Bank (the "Credit Agreement");

2.     Term Loan Note made by Borrower in favor of the Bank with a stated principal amount of $60,000,000 (the "Note");

3.     Security Agreement made by Borrower in favor of Bank (the "Security Agreement");

4.     Limited Guaranty made by Joseph A. Nathan, individually and as Trustee of the Joseph A. Nathan Living Trust dated December 30, 1996 in favor of the Bank;

5.     Limited Guaranty made by David Dedvukaj, individually, in favor of the Bank (together with #4 above, the "Guarantees", each also referred to herein as a "Guaranty");

6.     Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing made by Borrower in favor of the Bank, recorded October 6, 2022 in Instrument #2022104961 of the records in the Office of the Judge of Probate of Jefferson County, Alabama (the "Mortgage");

7.     Environmental Indemnity Agreement made by the Borrower and the Guarantors in favor of the Bank;

8.     Notice of Events of Default and Reservation of Rights Letter dated as of June 10, 2024, delivered by the Bank to Borrower and Guarantors (the "Default Letter"); and

9.     All other documents, agreements, instruments and assignments executed in connection with the foregoing.

25638792.1