FILED
2025 Dec-16  AM 09:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit 15



**VARNUM**
ATTORNEYS AT LAW

480 Pierce Street | Suite 300
Birmingham, Michigan 48009

Telephone 248 / 567-7800| Fax 248 / 567-7423 | www.varnumlaw.com

**Michael J. Romaya**

Direct 248 / 567-7419
mjromaya@varnumlaw.com

February 10, 2025

Contour Buckingham AL LLC
40950 Woodward Ave., Suite 300          **VIA UPS NEXT DAY AIR**
Bloomfield Hills, Michigan 48304
Attention: David Dedvukaj

> *Re:*    *Contour Buckingham AL LLC, a Delaware limited liability company ("__Borrower__") – Wells Fargo Bank, National Association ("__Lender__") - Demand for Payment of $60,000,000.00 loan (the "__Loan__")*

Dear Mr. Dedvukaj:

We are legal counsel to Lender with respect to the Loan. Borrower and Guarantors, as applicable, are obligated to Lender under that certain: (i) Credit Agreement dated September 30, 2022 between the Borrower and the Lender, as amended from time to time (the "Agreement"), (ii) Term Loan Note dated September 30, 2022 made by Borrower in favor of Lender with a face amount of $60,000,000.00 (the "Note"), (iii) Limited Guaranty dated September 30, 2022 made by Joseph A. Nathan, individually and as trustee of the Joseph A. Nathan Living Trust dated December 30, 1996, (iv) Limited Guaranty dated September 30, 2022 made by David Dedvukaj in favor of Lender, (v) Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing made by Borrower in favor of Lender dated September 30, 2022 and recorded October 6, 2022 in Instrument #2022104961 of the records in the Office of the Judge of Probate of Jefferson County, Alabama, encumbering the real estate commonly known as 114 Aspen Circle, Homewood, Alabama 35209 (the "Mortgaged Property"), (vi) Forbearance Agreement dated June 25, 2024 by and among Borrower, Guarantors and Lender (the "Forbearance Agreement"), and (vii) all other documents, agreements, certificates and instruments executed and/or delivered in connection therewith (the foregoing, collectively referred to herein as the "Loan Documents"). Capitalized terms used, but not defined in this letter shall have the meanings as set forth in the Loan Documents.

Pursuant to the Forbearance Agreement: (i) the Borrower and Guarantors acknowledged the existence of Events of Default under the Loan Documents, as more particularly set forth in the Forbearance Agreement (defined therein as the "Existing Defaults"), and that, as a result of such Existing Defaults, (A) Lender elected to accelerate all amounts due to Lender under the Note and other Loan Documents (the "Indebtedness") and (B) Lender is entitled to enforce all of its rights and remedies under the Loan Documents and applicable law; and (ii) the Lender agreed to forbear from exercising such rights and remedies (including its immediate right to repayment of the Indebtedness) until the Termination Date (which occurred on August 31, 2024).

Additional Events of Default have occurred under the Loan Documents resulting from Borrower's failure to (i) make the payments required under the Loan Documents, (ii) maintain a Debt Service Coverage Ratio of not less than 1.25 to 1.00 for the calendar quarters ended March 31, 2024, June 30, 2024, September 30, 2024, and December 31, 2024 and (iii) pay the 2023 and 2024 real property taxes assessed against the Mortgaged Property (collectively, the "Additional Defaults").

Contour Buckingham AL LLC
February 10, 2025
Page 2

As a result of the Existing Defaults, the Additional Defaults, and the expiration of the Forbearance Period, (i) Lender no longer has any obligation to forbear from enforcing its rights and remedies under the Loan Documents or applicable law, and may, at any time and without further notice, enforce all of its rights and remedies under the Loan Documents and applicable law, and (ii) Lender hereby makes demand on Borrower and Guarantors for immediate payment in full of all obligations and indebtedness owing to the Lender under the Note and other Loan Documents. The unpaid balance owing under the Note as of the date hereof is $58,878,226.00 of principal plus accrued interest and Lender's fees, costs and expenses.

Borrower is further notified that as a part of the exercise of its rights and remedies, Lender has elected to increase the interest rate accruing on the Note, effective as of September 1, 2024 (the first day after expiration of the Forbearance Period), by instituting the default rate of four percentage points (4.0%), such that from and after such date, all interest under the Note shall accrue at a fluctuating rate per annum equal to six percent (6%) above the SOFR Average (as defined in the Note) in effect from time to time, as determined by Lender.

Please take further notice that the existence and continuation of the Existing Defaults and the Additional Defaults specified above constitute defaults under a separate derivatives contract between Borrower and Lender (as used herein, the term "Swap Agreement" means the ISDA Master Agreement dated January 30, 2019 between the Borrower and Lender, any schedule to such ISDA Master Agreement, any credit support annex between the Borrower and Lender, and all trade confirmations in connection with the foregoing ISDA Master Agreement). Lender specifically reserves all rights and remedies under the Swap Agreement, including the right to designate an early termination date for all transactions thereunder and withhold all payments that may be due to the Borrower in connection therewith. The amount which may become due from either the Borrower or Lender in connection with early termination of transactions under the Swap Agreement is dependent upon market conditions existing at the time transactions are unwound. If an early termination fee is payable by Lender, this fee may be set-off against amounts due under the Loan Documents. Lender will refer the Borrower to a derivatives specialist if the Borrower would like to discuss such transactions, including obtaining quotes or offers to unwind them.

**This letter is not intended as a statement of the amounts owing to Lender by any guarantor or other obligor whose obligations to Lender may not be co-extensive with those of the Borrower. In that regard, to the extent any payment or obligation to Wells Fargo Bank, National Association arises under a "swap" as defined in the Commodity Exchange Act and regulations thereunder, such payment or obligation is and shall be non-recourse against any guarantor that was not an ECP on the date the swap was entered into (or the date on which the relevant guarantee was executed, whichever is later), subject to the ISDA Non-ECP Guarantor Exclusionary Terms published on April 18, 2013 by the International Swaps and Derivatives Association, Inc. As used herein, "ECP" means an "eligible contract participant" as defined in the Commodity Exchange Act and regulations thereunder. The ISDA Non-ECP Guarantor Exclusionary Terms are available at https://www.isda.org/a/OviDE/27666729-2-isdanon-ecpexclusionaryterms.pdf and are incorporated herein by reference.**

You are advised that Lender reserves all rights and remedies under the Loan Documents, the Swap Agreement and applicable law, which includes the right to exercise such rights and remedies at any time without any further written notice to the Borrower or Guarantors. No forbearance, delay or inaction by the Lender in the exercise of its rights and remedies, and no continuing performance by the Lender or the Borrower and/or Guarantors under the Agreement and other Loan Documents and the Swap

Contour Buckingham AL LLC
February 10, 2025
Page 3

Agreement (a) shall constitute: (i) a modification or an alteration of the terms, conditions or covenants of the Loan Documents or the Swap Agreement, all of which remain in full force and effect; or (ii) a waiver, release or limitation upon the Lender's exercise of any of its rights and remedies thereunder, all of which are hereby expressly reserved; or (b) shall relieve or release the Borrower or any Guarantor in any way from any of their respective duties, obligations, covenants or agreements under the Loan Documents, the Swap Agreement or from the consequences of any Events of Default.

If you have any questions, please feel free to contact the undersigned.

Very truly yours,

**VARNUM**

Michael J. Romaya

cc:    David Arreola, Vice President (*via e-mail*)
       Guarantors:
           Joseph A. Nathan, individually and as trustee of the Joseph A. Nathan Living Trust dated December 30, 1996 (916 Ruffner Avenue, Birmingham, Michigan 48009, *via UPS Next Day Air*)
           David Dedvukaj (873 Watkins, Birmingham, Michigan 48009, *via UPS Next Day Air*)

26787346.2



1 OF 1

LTR

KATHY DEPP
2485677400 7433
VARNUM - BIRMINGHAM
480 PIERCE STREET
BIRMINGHAM MI 48009

SHIP TO:
DAVID DEDVUKAJ
CONTOUR BUCKINGHAM
SUITE 300
40950 WOODWARD AVENUE
BLOOMFIELD HILLS MI 48304-5128

MI 480 9-01

UPS NEXT DAY AIR
TRACKING #: 1Z 83R F25 01 9971 9282

1

BILLING: P/P

Dept/Name: M. Romaya
Matter#: 380302

CS 24.9.00.    WNTNVS0 7.0A 02/2025*



https://www.campusship.ups.com/cship/create?ActionOriginPair=default___PrintWindowPage&key=labelWindow&type=html&loc=en_US&instr=N&do...

KATHY DEPP
2485677400 7433
VARNUM - BIRMINGHAM
480 PIERCE STREET
BIRMINGHAM MI 48009

**LTR**  **1 OF 1**

**SHIP TO:**
DAVID DEDVUKAJ
DAVID DEDVUKAJ
873 WATKINS
**BIRMINGHAM MI 48009-1633**

**MI 480 9-01**

**UPS NEXT DAY AIR**
TRACKING #: 1Z 83R F25 01 9643 9303

**1**

**BILLING: P/P**

Dept/Name: M. Romaya
Matter#: 380302

CS 24.9.00.    WNTNV50 7.0A 02/2025*

™