IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WELLS FARGO BANK, N.A.,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | **CIVIL ACTION NO:** |
| § | **2:25-cv-02136-GMB** |
| **CONTOUR BUCKINGHAM AL LLC,** § | |
| **CONTOUR CALLINGTON AL LLC,** § | |
| and **CONTOUR CARLYLE AL LLC,** § | |
| § | |
| **Defendants.** § | |

**PLAINTIFF WELLS FARGO BANK, N.A.'S**
**MOTION FOR APPOINTMENT OF RECEIVER**

Plaintiff Wells Fargo Bank, N.A. ("***Lender***") files this *Motion for Appointment of Receiver* (the "***Receiver Motion***") pursuant to Rule 66 of the Federal Rules of Civil Procedure and under the inherent equitable powers of this Court, seeking the appointment of a receiver to take possession and control of the Contour Collateral (as defined below). In support of this motion, Lender relies on the *Verified Original Complaint* (the "***Complaint***"), its *Brief in Support of Plaintiff Wells Fargo Bank, N.A.'s Motion for Appointment of Receiver* (the "***Brief***")[1] and the *Declaration of Jonathon S. Margolis,* and respectfully states as follows:

**BACKGROUND**

1. Lender made a $60 million term loan to Contour Buckingham AL LLC ("***Buckingham***"), and an $85 million term loan to Contour Callington AL LLC ("***Callington***") and Contour Carlyle AL LLC ("***Carlyle***" and, collectively with Buckingham and Callington, the

---
[1] All capitalized terms used and not otherwise defined herein shall have the meaning attributable to them in the Brief.

"***Contour Borrowers***"), which loans the Contour Borrowers have failed to repay as agreed (the "***Contour Loans***").

2. The Contour Borrowers own three large, multi-family communities in Jefferson County, Alabama, comprised of 1,796 residential apartment units, known as The Park at Buckingham, The Park at Callington and The Park at Carlyle (collectively, the "***Facilities***").

3. The Contour Loans are secured by mortgages and assignments of rents on the Facilities and a security interest in all personal property of the Contour Borrowers, including without limitation, all personal property at the Facilities, all accounts and accounts receivable, general intangibles, inventory, goods, equipment, intellectual property, investment property, and deposit accounts (collectively, the "***Contour Collateral***").

4. Events of default have occurred and are continuing under the Contour Loans including, without limitation, the following:

    a. The Contour Borrowers have repeatedly failed to make monthly payments as required under the Contour Loans;

    b. The Contour Borrowers have failed to maintain the required Debt Service Coverage Ratios as required under the Contour Loans;

    c. The Contour Borrowers have failed to cure their prior defaults and to make additional payments as required under their respective Forbearance Agreements with Lender;

    d. The Contour Borrowers have failed to pay property taxes on the Facilities, federal payroll taxes and state unemployment taxes, thereby subjecting the Contour Collateral to tax liens and potentially tax sales;

    e. The Contour Borrowers have failed, upon acceleration of the Contour Loans in June of 2024, to pay all amounts owed and payable to Lender under the Contour Loan Documents; and

    f. The Contour Borrowers have failed to repay the Contour Loans in full prior to the earlier of August 31, 2025, as required under their respective Second Forbearance Agreements with Lender.

5. As demonstrated by the various defaults outlined above and described more fully in the Brief, the Contour Borrowers are unable to pay their debts as they become due.

6. The Contour Collateral is being subjected to and in danger of waste, loss, dissipation, and impairment unless a receiver is immediately appointed, and unless that receiver is allowed, among other things, to assume control of the Facilities and to take possession of the Contour Collateral.

## RELIEF REQUESTED

7. Lender requests entry of the proposed *Agreed Order Appointing Receiver* (the "***Agreed Receivership Order***") attached hereto as **Exhibit 1** appointing Farbman Group as receiver to, among other things, administer and control the Facilities and the Contour Collateral, enjoining the parties and any person or entity with notice of the receivership from interfering with the receiver's administration and control of the Facilities and the Contour Collateral absent further order of this Court, and setting the amount of the receiver's surety bond at $25,000.00.

## GROUNDS FOR RELIEF

8. First, as described more fully in the Brief, the Contour Borrowers expressly consented to the entry of the Agreed Receivership Order and the appointment of a receiver over the Contour Collateral in the event they failed to pay in full their indebtedness to Lender under the Loan Documents within the time period prescribed in their Second Forbearance Agreements.

9. Additionally, as described more fully in the Brief, the Contour Borrowers expressly agreed in their respective Mortgages that, upon an event of default, Lender is entitled "***as a matter of right***" to the appointment of a receiver to take control of the Contour Collateral, including, but not limited to, the right to receive the rents, issues, and profits flowing from the Contour Collateral.

10. The appointment of a receiver is appropriate where, like here, the parties have contractually agreed to a receivership. *See, e.g., Bank of New York Mellon v. Jefferson Co., Ala.*, 2009 WL 10704121 at *6 (N.D. Ala. June 12, 2009) (citing numerous federal courts who have recognized that the appointment of a receiver is appropriate in cases involving private sector entities where the parties have contractually agreed to a receivership)*; see also* Restatement Third of Property Mortgages § 4.3 ("A mortgagee is entitled to the appointment of a receiver to take possession of the real estate if the mortgagor is in default under the mortgage and the mortgage or other agreement contains...a provision authorizing appointment of a receiver to take possession and collect rents upon mortgagor default.").

11. Finally, and in addition to being contractually entitled to the appointment of a receiver, the appointment of a receiver to take control of and manage the Contour Collateral is necessary and proper because the equitable considerations weigh heavily in favor of such appointment.

12. Under federal common law, the appointment of a receiver is justified where the Court finds that a number of factors, including, but not limited to, the following, weigh in favor of appointing a receiver: (1) fraudulent conduct on the part of the defendant; (2) imminent danger that property will be lost or squandered; (3) the inadequacy of available legal remedies; (4) the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; (5) the plaintiff's probable success in the action and the possibility of irreparable injury to its interest in the property; and (6) whether the interests of the plaintiff and others sought to be protected will in fact be well served by the receivership. *See Bank of New York Mellon*, 2009 WL 10704121 at *7 (citing *Consol. Rail Corp. v. Fore River Railway*

*Co.*, 861 F.2d 322 (1st Cir. 1988)); *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241-42 (5th Cir. 1997); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993).

    13.    As set forth more fully in the Brief, the above elements weigh in favor of appointing a receiver in this action:

    a.    Given the Contour Borrowers' financial condition, there is imminent danger of the Contour Collateral being wasted, lost, diminished and/or impaired. Without limitation, tax liens are accruing against the Contour Collateral and there is evidence to suggest that rents from the Facilities are being diverted and used for purposes unrelated to the operation and preservation of the Facilities.

    b.    Because the Contour Collateral is the primary source of repayment for the Contour Loans and the Contour Borrowers otherwise lack the financial ability to pay a money judgment, other remedies are inadequate.

    c.    The benefits of appointing a receiver far outweigh any burdens to other affected parties.

    d.    The probability of Lender's success on the general relief sought in the Complaint is extremely high.

    e.    The proposed receiver, Farbman Group, is a turnaround full service commercial real estate company that provides, among other things, property management, brokerage, construction, and maintenance services to real estate organizations seeking to maximize value and create stability for their assets. Farbman Group has extensive experience in complex real estate transaction management, including providing clients with various corporate turnaround and restructuring services, financial advisory services, and corporate bankruptcy and asset management services. Since its inception in 1976, Farbman Group professionals have regularly served as court-appointed receivers for distressed companies in a wide range of industries. Currently, Farbman Group manages more than 25 million square feet of office, retail, medical, industrial, and multi-family real estate and is recognized as a leading commercial management and brokerage firm by a wide variety of individual and institutional clientele.

    f.    Jonathon S. Margolis ("***Mr. Margolis***"), the Senior Vice President of Asset Management at Farbman Group, is qualified and prepared to serve in directing the proposed receiver's duties. Notably, Mr. Margolis has held leasing and management responsibilities across a diverse portfolio, including office, healthcare, industrial, and retail properties. As an experienced turnaround professional, Mr. Margolis is well-positioned to improve the performance of the Facilities, and, therefore, the value of the Contour Collateral.  Additionally, if warranted in the exercise of his business judgment, Mr. Margolis, as a director of the federal receiver's duties, will have the ability, subject to this Court's approval and orders, to market the Contour Collateral for sale as part of a going concern sale of the Facilities and to conduct a receiver sale thereof pursuant to 28 U.S.C.

§ 2004 and § 2001, free and clear of liens, claims and encumbrances, to maximize the value of the Contour Collateral for the benefit of Lender and all other interested parties.

14. The Lender submits the attached information setting forth Mr. Margolis' credentials. As evidenced by Mr. Margolis' declaration attached hereto as **Exhibit 2**, Mr. Margolis has extensive experience managing distressed enterprises similar in size, sophistication, and location to the Facilities at issue in this case and is willing to serve as director of the receiver's duties in this matter.

15. Farbman Group's proposed fee for serving as receiver in this matter is set forth in **Exhibit 3** attached hereto.

WHEREFORE, premises considered, Lender respectfully requests this Court enter the Agreed Order Appointing Receiver, attached to this motion as **Exhibit 1**, providing for the appointment of Farbman Group as receiver over the Facilities and Mr. Margolis as director of the receiver's duties. Lender requests such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

**BRADLEY ARANT BOULT CUMMINGS LLP**

BY: */s/ N. Chris Glenos*
**N. CHRISTIAN GLENOS**
**Bar Number: ASB-0784-L48N**
**MACY WALTERS**
**Bar Number: ASB-4358-E175**
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2104
Telephone: (205) 521-8000
cglenos@bradley.com
mwalters@bradley.com

ATTORNEYS FOR WELLS FARGO BANK

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 16, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have delivered a copy of the document, via hand delivery, to be served with the complaint, as follows:

      Contour Buckingham AL LLC
      c/o CT Corporation System, Registered Agent
      2 North Jackson Street - Suite 605
      Montgomery, AL 36104

      Contour Callington AL LLC
      c/o CT Corporation System, Registered Agent
      2 North Jackson Street - Suite 605
      Montgomery, AL 36104

      Contour Carlyle AL LLC
      c/o CT Corporation System, Registered Agent
      2 North Jackson Street - Suite 605
      Montgomery, AL 36104

                                    */s/ N. Chris Glenos*
                                    N. Christian Glenos