FILED

2026 Jan-26  PM 02:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

**Exhibit A**
**Receiver's Monthly Financial Report (December 2025)**

# Monthly Financial Report

December 2025



**Farbman Group I Inc. As Recvr of Alabama Contour Properties**

| | |
|---|---|
| *Property:* | The Park at Buckingham: 114 Aspen Circle Birmingham, AL 35209 |
| | The Park at Callington: 700 Aspen Drive Birmingham, AL 35209 |
| | The Park at  Carlyle: 200 Robert Jemison Drive Birmingham, AL 35209 |
| *Property Type:* | Residential |
| *Year Built:* | The Park at Buckingham: 1972 |
| | The Park at Callington: 1978 |
| | The Park at Carlyle: 1983 |
| *Date Appointed:* | 12/23/2025 |
| *Rentable Sq Feet:* | The Park at Buckingham: 461,193/ 542 Units |
| | The Park at Callington: 482,518/ 603 Units |
| | The Park at Carlyle: 576,278/ 629 Units |
| | Total: 1,520,089/ 1,774 Units |
| *Court:* | United States District Court for the Nothern District of Alabama Southern Division |
| *Judge:* | Hon. Gray M. Borden |
| *Receiver:* | Farbman Group |
| *Receiver's Counsel:* | Ryan Cochran of Epstein Becker & Green P.C. |
| *Plaintiff:* | Wells Fargo Bank, N.A. |
| *Defendant:* | The Park at Buckingham AL LLC, The Park at CallingtonAL, LLC, and The Park at Carlyle AL, LLC |
| *Case Number:* | 2:25-cv-02136-GMB |
| *Managed By:* | Farbman Group |
| *Property Manager:* | Denise Whittaker |
| *Property Accountant:* | Sarah Caley |
| *Leased By:* | Farbman Group |
| *Sold by:* | N/A |
| *Occupancy:* | The Park at Buckingham: 68.8% |
| | The Park at Callington: 70.3% |
| | The Park at Carlyle: 65.7% |
| | Total: 68.2% |
| | *Occupancy data is based on Defendant's records. Management is verifying occupancy of all units. |
| *Parking:* | The Park at Buckingham: 653 (est.) uncovered |
| | The Park at Callington: 809 (est.) uncovered |
| | The Park at Carlyle: 664 (est.) uncovered |
| | Total: 2126 (est.) uncovered |
| *Financial Highlights:* | As of December 2025 the ending cash balance is: $0.00 |
| | The December 2025 Total Revenue was $0.00 |
| | The December 2025 Operating Expenses were $0.00 |
| | The Year-to-Date Net Operating Income through December 2025 is $0.00 |
| | Receiver is opening an operating account, which will be active in January. |

## Farbman Group I Inc. As Recvr of Alabama Contour Properties

**_Surety Bond:_**                    Surety bond of $25,000 was posted 12/24/2025.

**_Filing of inventory:_**            Partial inventory lists are completed and included in this report. In unit inventory to be completed in January and filed with the next report.

**_Leasing Activity:_**               The Receiver and management are still reviewing all vacancies and determining which units are ready to be leased or need improvements. The Receiver will market all leasable units using commerically reasonable methods.

**_Sales Activity:_**                 None to report.

**_Marketing Activity:_**             None to report.

**_Significant Tenant Issues:_**

The Park at Buckingham:                Appointed receiver as of December 23, 2025.  Tenant past-due balances total $710,048.73. The Receiver will review balances and determine the next steps for collection. Defendant had not been pursuing collections or evictions.

The Park at Callington:                Appointed receiver as of December 23, 2025.  Tenant past-due balances total $1,271,692.74. The Receiver will review balances and determine the next steps for collection. Defendant had not been pursuing collections or evictions.

The Park at Carlyle:                   Appointed receiver as of December 23, 2025.  Tenant past-due balances total $1,798,303.69. The Receiver will review balances and determine the next steps for collection. Defendant had not been pursuing collections or evictions.

**_Operational Issues:_**

*Vacant units are currently being inspected for condition and security. Initial inspections resulted in potential signs of trespass.

*A sewage line break occurred at Park at Buckingham (41 Aspen Run) on December 31, 2025, which is being repaired by internal maintenance and expected to be complete in early January 2026.

*Multiple violations from City of Homewood- please see attached list.  The Receiver and management are reviewing and obtaining pricing for the open violations.

*The Past-due water bill totals $1,329,478.57 for Buckingham, Callington and Carlyle.  There was a scheduled shut-off, but management shared a copy of the Receivership Order with the Water department and they advised they will not cut water service due to the pre-receivership amounts due.

*City of Homewood will be demolishing 1-9 Aspen Run at The Park at Buckingham which was agreed to by defendant. Demolititon expected in early 2026.

**_Capital Projects:_**               The Receiver and management are reviewing the assets for potential capital projects. This includes reviewing stalled construction projects, deferred maintenance, and the pending municipal violations against the buildings.

**_Real Estate Taxes:_**              2023 Taxes due $703,920.00
The Park at Buckingham:                2024 Taxes due $630,045.00
                                       2025 Taxes due $594,198.01

The Park at Callington:                2023 Taxes due $704,355.74

2024 Taxes due $669,610.51

2025 Taxes due $572,658.89

The Park at Carlyle:

2023 Taxes due $741,639.44

2024 Taxes due $697,342.25

2025 Taxes due $622,507.29

Total outstanding taxes $5,936,277.13

***Insurance:***

The properties are insured by the Defendant through Rhodes Risk Advisors. The current policy term is 12/12/25 - 12/12/26. Copies of the insurance certificates are included with this report. The Receiver is reviewing the policies to ensure they meet the requirements of the Loan.

***Legal:***

The Receiver requested and received a list of pending litigation from the Defendant. The Receiver will review the details of each case to determine the next course of action.

***Receivership Fees:***

1% of the monthly gross revenue from the facilities.

***Protective Advances:***

None to report.

| Farbman Group | | | |
|---|---|---|---|
| Inventory - The Park at Buckingham | | | |
| 1/14/2026 | | | |
| | | | |
| **Item** | **QTY** | **Area Seen** | **Est Price** |
| Functional Trainer Machine | 1 | Gym | $2,499 |
| Cybex tredmill | 2 | Gym | $5,934 |
| Cybex elliptical | 2 | Gym | $5,000 |
| Weights | 10 | Gym | $1,650 |
| Cybex Leg Press | 1 | Gym | $3,499 |
| Cybex Seated Leg Curl | 1 | Gym | $2,699 |
| Cybex Leg Extension | 1 | Gym | $1,950 |
| Cybex Benches | 2 | Gym | $1,698 |
| Inflight Fitness Bench | 1 | Gym | $899 |
| Cybex Lat Pull Down | 1 | Gym | $2,895 |
| Inflight Fitness Ab/Torso Machine | 1 | Gym | $330 |
| Cybex Chest Press | 1 | Gym | $2,189 |
| Cybex Row/Rear Delt Machine | 1 | Gym | $1,950 |
| Spirit Elliptical | 2 | Gym | $3,398 |
| Cybex Cyclone Exercise Bike | 1 | Gym | $320 |
| Cybex Weight Rack | 1 | Gym | $599 |
| | | | |
| GE Dishwasher | 1 | Caf | $552 |
| GE Refridgerator | 1 | Caf | $1,034 |
| Keurig Coffee Machine | 1 | Caf | $109 |
| GE Stove | 1 | Caf | $699 |
| GE Microwave | 1 | Caf | $259 |
| | | | |
| | **QTY** | **Area Seen** | |
| Computer Chairs | 4 | Conference | $840 |
| Table | 1 | Conference | $1,079 |
| | | | |
| | | | |

| Item | Qty | Location | Price |
|---|---|---|---|
| Computer Chair | 1 | Comp Lab | $210 |
| | | | |
| Couches | 2 | Lobby | $1,380 |
| Chairs | 6 | Lobby | $2,100 |
| Glass Table | 1 | Lobby | $650 |
| Desk | 2 | Lobby | $600 |
| End Tables | 5 | Lobby | $750 |
| Computer Chairs | 2 | Lobby | $420 |
| Computers | 2 | Lobby | $1,500 |
| Guest Chairs | 4 | Lobby | $240 |
| Office Phones | 2 | Lobby | $138 |
| | | | |
| Storage Shelf | 1 | Manager Office | $250 |
| Computer | 1 | Manager Office | $750 |
| Table | 1 | Manager Office | $275 |
| Computer Chairs | 2 | Manager Office | $420 |
| HP Printer | 1 | Manager Office | $60 |
| Bookcase | 1 | Manager Office | $200 |
| Phone | 1 | Manager Office | $69 |
| Desk | 1 | Manager Office | $300 |
| 2 Drawer Cabinet | 2 | Manager Office | $440 |
| Igloo Mini Refridgerator | 1 | Manager Office | $175 |
| Paper Cutter | 1 | Manager Office | $40 |
| Mitel Safe | 1 | Manager Office | $200 |
| Check Scanner | 1 | Manager Office | $735 |
| | | | |
| Computer | 1 | Office 2 | $750 |
| Computer Chairs | 2 | Office 2 | $420 |
| Drawer Cabinet | 2 | Office 2 | $440 |
| Desk | 1 | Office 2 | $300 |
| Phone | 1 | Office 2 | $69 |
| | | | |
| Desk | 1 | Office 3 | $300 |

| | | | |
|---|---|---|---|
| Computer Chair | 1 | Office 3 | $210 |
| Phone | 1 | Office 3 | $69 |
| | | | |
| File Cabinets | 6 | Key Room | $1,800 |
| Barska Key Cabinet | 1 | Key Room | $437 |
| Kyocera Taskalfa 2554 Printer | 1 | Key Room | $3,299 |
| Canon Printer | 1 | Key Room | $1,500 |
| Key Trak System | 1 | Key Room | $2,400 |
| Key Maker 045 HD Manual Machine | 1 | Key Room | $2,208 |
| Dresser Cabinet | 1 | Key Room | $250 |
| Storage Cabinet | 1 | Key Room | $250 |
| Book Shelf | 1 | Key Room | $80 |
| Dell Moniter | 1 | KeyRoom | $500 |
| | | | |
| Desk | 1 | Office 4 | $200 |
| End Table | 1 | Oficce 4 | $350 |
| | | | |

| Fabman Group | | | | | |
| --- | --- | --- | --- | --- | --- |
| The Park at Callington and The Park at Carlyle Inventory | | | | | |
| 1/17/2026 | | | | | |
| item | Qty | Est. Price | | Total | | Area Seen |
| Kitchen Hood/Extractor Fan | 33 | $ | 40.00 | $ | 1,320.00 | Callington-1 Aspen Dr. |
| Texture | 4 | $ | 5.00 | $ | 20.00 | Callington-1 Aspen Dr. |
| Ceramic Glue | 8 | $ | 5.00 | $ | 40.00 | Callington-1 Aspen Dr. |
| Quadtro Washing Machine Outlet Box  (220V) | 88 | $ | 30.00 | $ | 2,640.00 | Callington-1 Aspen Dr. |
| Gallons Of Paint White | 5 | $ | 20.00 | $ | 100.00 | Callington-1 Aspen Dr. |
| Gallons Of Paint Dark White | 13 | $ | 20.00 | $ | 260.00 | Callington-1 Aspen Dr. |
| Gallon Of Paint For Exterior (Open) | 1 | $ | 5.00 | $ | 5.00 | Callington-1 Aspen Dr. |
| Polyblend Plus | 4 | $ | 20.00 | $ | 80.00 | Callington-1 Aspen Dr. |
| Prism Cement Grout | 3 | $ | 20.00 | $ | 60.00 | Callington-1 Aspen Dr. |
| Painter Plastic Protection (Box) | 4 | $ | 20.00 | $ | 80.00 | Callington-1 Aspen Dr. |
| Sandpaper 3M  (Box X24 + 3) | 2 | $ | 20.00 | $ | 40.00 | Callington-1 Aspen Dr. |
| Tapes For Joining Plasterboard (Paper) | 11 | $ | 10.00 | $ | 110.00 | Callington-1 Aspen Dr. |
| Tapes For Joining Plasterboard (Mesh) | 4 | $ | 10.00 | $ | 40.00 | Callington-1 Aspen Dr. |
| Pvc Glue | 4 | $ | 10.00 | $ | 40.00 | Callington-1 Aspen Dr. |
| Purpe Primer | 4 | $ | 5.00 | $ | 20.00 | Callington-1 Aspen Dr. |
| Tapes Of Extractor | 6 | $ | 5.00 | $ | 30.00 | Callington-1 Aspen Dr. |
| Small Blinds | 2 | $ | 20.00 | $ | 40.00 | Callington-1 Aspen Dr. |
| Elbow/Schedule 40 Pressure 1 1/2" | 30 | $ | 25.00 | $ | 750.00 | Callington-1 Aspen Dr. |
| Air Conditioning Grille | 48 | $ | 10.00 | $ | 480.00 | Callington-1 Aspen Dr. |
| Hallway Lamps | 1 | $ | 10.00 | $ | 10.00 | Callington-1 Aspen Dr. |
| Cabinet Hardware (Box X30 + 1) | 10 | $ | 30.00 | $ | 300.00 | Callington-1 Aspen Dr. |
| Toilet Screws 2  1/4" Pack | 80 | $ | 5.00 | $ | 400.00 | Callington-1 Aspen Dr. |
| Full Toilet (New) | 1 | $ | 80.00 | $ | 80.00 | Callington-1 Aspen Dr. |
| Oven Bulb | 22 | $ | 2.00 | $ | 44.00 | Callington-1 Aspen Dr. |
| Cooper Male Adapter 1/2" (Open Jar) | 20 | $ | 10.00 | $ | 200.00 | Callington-1 Aspen Dr. |
| Plumbing Snake | 1 | $ | 100.00 | $ | 100.00 | Callington-1 Aspen Dr. |
| Mirrors | 24 | $ | 50.00 | $ | 1,200.00 | Callington-1 Aspen Dr. |
| Floursecent Light Philips | 14 | $ | 1.00 | $ | 14.00 | Callington-1 Aspen Dr. |
| Air Filters Various | 21 | $ | 1.00 | $ | 21.00 | Callington-1 Aspen Dr. |
| Refrigerants R-407C & R-410A (Full) | 5 | $ | 200.00 | $ | 1,000.00 | Callington-1 Aspen Dr. |
| Microwave | 1 | $ | 100.00 | $ | 100.00 | Callington-1 Aspen Dr. |
| Ptac | 1 | $ | 500.00 | $ | 500.00 | Callington-1 Aspen Dr. |
| Insulated Flexible Duct 4" , 6" & 8" | 6 | $ | 20.00 | $ | 120.00 | Callington-1 Aspen Dr. |
| Liquidtight Flexible Conduct 1/2" X 100Ft | 4 | $ | 20.00 | $ | 80.00 | Callington-1 Aspen Dr. |
| Heating Elements For Water Heater | 4 | $ | 75.00 | $ | 300.00 | Callington-1 Aspen Dr. |
| Vinyl Electrical Tape 60Ft Rolls | 19 | $ | 5.00 | $ | 95.00 | Callington-1 Aspen Dr. |
| Run Capacitor 45+5 Mfd | 14 | $ | 50.00 | $ | 700.00 | Callington-1 Aspen Dr. |
| Run Capacitor 7,5 Mfd | 13 | $ | 50.00 | $ | 650.00 | Callington-1 Aspen Dr. |
| Run Capacitor 35+5 Mfd | 5 | $ | 50.00 | $ | 250.00 | Callington-1 Aspen Dr. |
| Transformers A/C | 20 | $ | 50.00 | $ | 1,000.00 | Callington-1 Aspen Dr. |
| Realy And Hard Start Capacitor | 4 | $ | 50.00 | $ | 200.00 | Callington-1 Aspen Dr. |
| Night Fox Electronic Photocontrol | 8 | $ | 20.00 | $ | 160.00 | Callington-1 Aspen Dr. |
| Large Kitchen Plates (Black) (Pack X 6) | 8 | $ | 1.00 | $ | 8.00 | Callington-1 Aspen Dr. |
| Large Kitchen Plates (Gray) (Pack X6) | 14 | $ | 1.00 | $ | 14.00 | Callington-1 Aspen Dr. |
| Small Kitchen Plates (Gray) (Pack X6) | 10 | $ | 1.00 | $ | 10.00 | Callington-1 Aspen Dr. |
| Breakers (Electrical) | 77 | $ | 5.00 | $ | 385.00 | Callington-1 Aspen Dr. |
| Interior Lock Hall And Closet (Box X6) | 6 | $ | 25.00 | $ | 150.00 | Callington-1 Aspen Dr. |
| Exterior Wall Lantern (Box X12 Packs) | 3 | $ | 25.00 | $ | 75.00 | Callington-1 Aspen Dr. |
| Kitchen Faucet (Box X12) | 1 | $ | 40.00 | $ | 40.00 | Callington-1 Aspen Dr. |
| Bathroom Lamp With 3 Bulbs | 18 | $ | 30.00 | $ | 540.00 | Callington-1 Aspen Dr. |
| Bathroom Lamp With 4 Bulbs | 24 | $ | 30.00 | $ | 720.00 | Callington-1 Aspen Dr. |
| Towel Racks | 11 | $ | 20.00 | $ | 220.00 | Callington-1 Aspen Dr. |
| Metal Tubes For Shower Curtains | 12 | $ | 5.00 | $ | 60.00 | Callington-1 Aspen Dr. |

| Item | Qty | Unit Price | Total | Location |
|---|---|---|---|---|
| Plastic Wallplates (Different Sizes) (Units Aprox) | 2000 | $ 0.50 | $ 1,000.00 | Callington-1 Aspen Dr. |
| Switches (Units) | 556 | $ 5.00 | $ 2,780.00 | Callington-1 Aspen Dr. |
| Outlets (Units) | 75 | $ 5.00 | $ 375.00 | Callington-1 Aspen Dr. |
| Door Locks | 7 | $ 20.00 | $ 140.00 | Callington-1 Aspen Dr. |
| Kitchen Outlets  (Gfci) | 8 | $ 30.00 | $ 240.00 | Callington-1 Aspen Dr. |
| | | | | |
| Rta Cabinet White Different Sizes (Boxs) | 321 | $ 100.00 | $ 32,100.00 | Callington-2 Aspen Dr. |
| Insolation Plates A/C | 4 | $ 50.00 | $ 200.00 | Callington-2 Aspen Dr. |
| | | | | |
| Sheetrock | 179 | $ 10.00 | $ 1,790.00 | Callington- Office Under Renovation |
| Exterior Door | 1 | $ 200.00 | $ 200.00 | Callington- Office Under Renovation |
| White Cabinets (Box) | 52 | $ 100.00 | $ 5,200.00 | Callington- Office Under Renovation |
| Light Brown Cabinets (Box) | 179 | $ 100.00 | $ 17,900.00 | Callington- Office Under Renovation |
| Roof Insulation (Packs) | 30 | $ 50.00 | $ 1,500.00 | Callington- Office Under Renovation |
| Interior Doors 36"X80" | 58 | $ 150.00 | $ 8,700.00 | Callington- Office Under Renovation |
| Windows For Studios | 24 | $ 200.00 | $ 4,800.00 | Callington- Office Under Renovation |
| Windows For Bedroom | 54 | $ 200.00 | $ 10,800.00 | Callington- Office Under Renovation |
| Ducts A/C | 25 | $ 20.00 | $ 500.00 | Callington- Office Under Renovation |
| Glass Walls | 32 | $ 100.00 | $ 3,200.00 | Callington- Office Under Renovation |
| Washing Machines | 3 | $ 400.00 | $ 1,200.00 | Callington- Office Under Renovation |
| Dryers | 3 | $ 400.00 | $ 1,200.00 | Callington- Office Under Renovation |
| | | | | |
| Printer Kyocera Taskalfa 255Ci | 1 | $ 100.00 | $ 100.00 | Callington- Temp. Management Office |
| Printer Hp Laser Jet Pro 400Color (Unused) | 1 | $ 100.00 | $ 100.00 | Callington- Temp. Management Office |
| Metal Filing Cabinets (Large) | 3 | $ 20.00 | $ 60.00 | Callington- Temp. Management Office |
| Metal Filing Cabinets (Medium) | 3 | $ 20.00 | $ 60.00 | Callington- Temp. Management Office |
| Metal Filing Cabinets (Small) | 1 | $ 20.00 | $ 20.00 | Callington- Temp. Management Office |
| Plastic Filing Cabinets (Small) | 1 | $ 20.00 | $ 20.00 | Callington- Temp. Management Office |
| Laptop Hp (Unused) | 1 | $ 300.00 | $ 300.00 | Callington- Temp. Management Office |
| Desk | 8 | $ 50.00 | $ 400.00 | Callington- Temp. Management Office |
| Desk Chairs | 6 | $ 25.00 | $ 150.00 | Callington- Temp. Management Office |
| Side Chairs | 5 | $ 25.00 | $ 125.00 | Callington- Temp. Management Office |
| Printer Epson Workforce Pro Wf-3820 | 1 | $ 100.00 | $ 100.00 | Callington- Temp. Management Office |
| Paper Shredder | 1 | $ 20.00 | $ 20.00 | Callington- Temp. Management Office |
| Metal Security Box With Key | 1 | $ 10.00 | $ 10.00 | Callington- Temp. Management Office |
| Pc Hp (2 Unused) | 4 | $ 200.00 | $ 800.00 | Callington- Temp. Management Office |
| Pc Dell | 1 | $ 200.00 | $ 200.00 | Callington- Temp. Management Office |
| Printer Hp Officejet Pro6978 (Unused) | 1 | $ 100.00 | $ 100.00 | Callington- Temp. Management Office |
| Fridge Whirlpool | 1 | $ 200.00 | $ 200.00 | Callington- Temp. Management Office |
| Microwave Ge | 1 | $ 100.00 | $ 100.00 | Callington- Temp. Management Office |
| Stove Ge | 1 | $ 200.00 | $ 200.00 | Callington- Temp. Management Office |
| Coffee Machine Keurig | 1 | $ 30.00 | $ 30.00 | Callington- Temp. Management Office |
| Metal/Wood/Glass Entrance Table | 1 | $ 50.00 | $ 50.00 | Callington- Temp. Management Office |
| | | | | |
| Small Desk | 5 | $ 50.00 | $ 250.00 | Callington- Temp. Management Office |
| Desk Chairs | 2 | $ 25.00 | $ 50.00 | Callington- Temp. Management Office |
| Outdoor Chairs | 2 | $ 10.00 | $ 20.00 | Callington- Temp. Management Office |
| 3-Seater Sofa | 1 | $ 100.00 | $ 100.00 | Callington- Temp. Management Office |
| 1-Seater Sofa | 1 | $ 50.00 | $ 50.00 | Callington- Temp. Management Office |
| Metal Table With Glass Top | 1 | $ 25.00 | $ 25.00 | Callington- Temp. Management Office |
| Led Tv 40 In | 2 | $ 100.00 | $ 200.00 | Callington- Temp. Management Office |
| Pc Dell | 2 | $ 200.00 | $ 400.00 | Callington- Temp. Management Office |
| Pc Hp | 2 | $ 200.00 | $ 400.00 | Callington- Temp. Management Office |
| Printer  Hp Laser Jet Pro Mfp M22Dw | 1 | $ 100.00 | $ 100.00 | Callington- Temp. Management Office |
| Microwave Ge | 1 | $ 100.00 | $ 100.00 | Callington- Temp. Management Office |
| Stove Ge | 1 | $ 400.00 | $ 400.00 | Callington- Temp. Management Office |
| Printer Brother | 1 | $ 100.00 | $ 100.00 | Callington- Temp. Management Office |

| | | | | |
|---|---|---|---|---|
| Ceramic Sink Bathroom | 38 | $ 50.00 | $ 1,900.00 | Carlyle-Storage |
| Toilet Seats | 30 | $ 15.00 | $ 450.00 | Carlyle-Storage |
| Filters A/C  16X20 | 32 | $ 1.00 | $ 32.00 | Carlyle-Storage |
| Bathtub | 2 | $ 300.00 | $ 600.00 | Carlyle-Storage |
| Refrigerators | 12 | $ 500.00 | $ 6,000.00 | Carlyle-Storage |
| Patio Window/Door | 166 | $ 400.00 | $ 66,400.00 | Carlyle-Storage |
| Townhouse Windows | 65 | $ 150.00 | $ 9,750.00 | Carlyle-Storage |
| Non-Smooth Interior Doors 30"X80" | 23 | $ 100.00 | $ 2,300.00 | Carlyle-Storage |
| Windows 36"X48" | 88 | $ 200.00 | $ 17,600.00 | Carlyle-Storage |
| Windows 49"X49" | 16 | $ 200.00 | $ 3,200.00 | Carlyle-Storage |
| Electric Heating Elements For Double And Single Hits | 15 | $ 50.00 | $ 750.00 | Carlyle-Storage |

**City of Homewood Violations**

**Email received January 6, 2026 from Wyatt Pugh, Building Official for City of Homewood.**

Good afternoon,

Yes, there is an open property enforcement case on file for the apartment complex referenced below.

An Unsafe Structure Notice was issued by the City of Homewood and served on the property owner on December 8, 2025, following a determination by the Homewood Housing Code Abatement Board that portions of the complex constitute a public nuisance due to documented unsafe conditions. As of today, the case remains open and the conditions identified in the notice have not been abated.

The Unsafe Structure Notice lists the following unsafe conditions, among others:

- Structural instability of stairways due to deteriorated stringers and uneven treads

- Vacant units unsecured with evidence of vagrant activity and feral animals

- Missing fire-stopping between floors and attic spaces throughout multiple buildings

- Collapsed or structurally unstable breezeways and deteriorated decks requiring evaluation and repair by an Alabama-licensed structural engineer

- Unprotected electrical connections and exposed energized wiring

- Subfloor deterioration and structurally unsound handrails and sidewalks in Building 9

- Crawlspace conditions including standing water, rotting floor joists, elevated humidity, and extensive mold contamination

- Independent laboratory findings documenting extremely elevated airborne mold levels and surface contamination presenting a documented health hazard for habitation

The Unsafe Structure Notice is a public record. If you would like a copy of the notice for your due-diligence review, please submit a request through the PUBLIC RECORDS REQUEST PORTAL.

Additionally, the building addressed as 10, 12, 14, 16, and 18 Aspen Cove was previously condemned by the city in 2024, no voluntary abatement action was taken by the owner, and the structure is currently scheduled for demolition by the City this month.

If you have any additional questions regarding the current enforcement status, feel free to reach out.

Sincerely,

Wyatt Pugh, CBO

Building Official, City of Homewood

*President, Code Officials Association of Alabama*

(205) 332-6800

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by Mimecast, a leader in email security and cyber resilience. Mimecast integrates email defenses with brand protection, security awareness training, web security, compliance and other essential capabilities. Mimecast helps protect large and small organizations from malicious activity, human error and technology failure; and to lead the movement toward building a more resilient world. To find out more, visit our website.

The Park at Buckingham Apartments

Building 1,3,5,7,9 Aspen Cove



FILED

2025 Dec-23  PM 02:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cv-2136-GMB |
| | ) | |
| CONTOUR BUCKINGHAM AL | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER APPOINTING RECEIVER

Before the court is the unopposed Motion for Appointment of Receiver.

Doc. 2.  For the reasons that follow, the motion is due to be granted.

### I.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.   Wells Fargo Bank, N.A. ("Lender") is a national banking association

having its principal place of business and main office in the State of South Dakota.

For purposes of diversity jurisdiction, Lender is a citizen of the State of South

Dakota. *Wachovia v. Schmidt*, 546 U.S. 303, 318 (2006) (for diversity jurisdiction,

a national banking association is "located" in and is a "citizen" of the state in which

its main office is located).

2.   Contour Buckingham AL LLC ("Contour Buckingham" or

"Buckingham") is a limited liability company organized and existing under the laws

of the State of Delaware.  No member of Buckingham is a citizen of the State of

South Dakota for purposes of diversity jurisdiction.

3.    Contour Callington AL LLC ("Contour Callington" or "Callington") is a limited liability company organized and existing under the laws of the State of Delaware.  No member of Callington is a citizen of the State of South Dakota for purposes of diversity jurisdiction.

4.    Contour Carlyle AL LLC ("Contour Carlyle" or "Carlyle") is a limited liability company organized and existing under the laws of the State of Delaware. No member of Carlyle is a citizen of the State of South Dakota for purposes of diversity jurisdiction.

## A.    The Buckingham Loan

5.    Contour Buckingham is the owner of a residential apartment complex situated at 114 Aspen Circle, Homewood, Alabama, commonly known as "The Park at Buckingham" (the "Buckingham Facility").

6.    On or about September 30, 2022, Lender made a term loan to Buckingham in the original principal amount of $60,000,000.00 (the "Buckingham Loan").

7.    The Buckingham Loan is evidenced by, among other things, that certain Term Loan Note dated September 30, 2022, executed by Buckingham in favor of Lender, as amended by that certain First Amendment to Term Loan Note dated May 31, 2023 (collectively as amended, the "Buckingham Note").

8.      To induce Lender to make the Buckingham Loan, Buckingham executed a Security Agreement dated September 30, 2022 in favor of Lender, granting Lender a first-priority security interest in all personal property of Buckingham, including, but not limited to, all accounts and accounts receivable, general intangibles, inventory, goods, equipment, intellectual property, investment property, and deposit accounts described in the Security Agreement and Schedule 1 to the Security Agreement (collectively, the "Buckingham Security Agreement").

9.      Lender perfected its security interest in the collateral described in the Buckingham Security Agreement through filing a UCC financing statement with the Delaware Department of State as U.C.C. Initial Filing No. 20228185712 (the "Buckingham UCC-1").

10.     As further security for Buckingham's obligations to Lender in connection with the Buckingham Loan, Buckingham executed and granted that certain Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing to Lender dated September 30, 2022, as recorded with the Office of the Judge of Probate of Jefferson County, Alabama, on October 6, 2022 as Instrument No. 2022104961 (the "Buckingham Mortgage").  The Buckingham Mortgage conveyed to Lender a security interest in and to the real property and improvements comprising the Buckingham Facility, as more particularly described in Exhibit A to the Buckingham Mortgage.

3

11.   The Buckingham Note, the Buckingham Security Agreement, the Buckingham UCC-1, the Buckingham Mortgage, the Buckingham Forbearance Agreement (as hereinafter defined) and any and all other documents evidencing, describing, securing, or relating to the Buckingham Loan are herein referred to as the "Buckingham Loan Documents."  The real and personal property collateral described in the Buckingham Loan Documents is collectively referred to herein as the "Buckingham Collateral."

12.   Pursuant to the terms of the Buckingham Loan Documents, the Buckingham Collateral secures all of Buckingham's obligations under the Buckingham Loan Documents.

**B.    The Callington/Carlyle Loan**

13.   Contour Callington is the owner of a residential apartment complex situated at 700 Aspen Drive, Birmingham, Alabama, commonly known as "The Park at Callington" (the "Callington Facility").

14.   Contour Carlyle is the owner of a residential apartment complex situated at 200 Robert Jemison Drive, Birmingham, Alabama, commonly known as "The Park at Carlyle" (the "Carlyle Facility" and, collectively with the Buckingham Facility and the Callington Facility, the "Facilities").

15.   On or about January 27, 2023, Lender made a term loan to Callington and Carlyle in the original principal amount of $85,000,000.00 (the

"Callington/Carlyle Loan").

16.     The Callington/Carlyle Loan is evidenced by, among other things, that certain Term Loan Note dated January 27, 2023 executed by Callington and Carlyle in favor of Lender, as amended by that certain First Amendment to Term Loan Note dated May 31, 2023, and as further amended by that certain Second Amendment to Term Loan Note dated August 22, 2023 (collectively as amended, the "Callington/Carlyle Note").

17.     To induce Lender to make the Callington/Carlyle Loan, Callington and Carlyle executed a Security Agreement dated January 27, 2023 in favor of Lender, granting Lender a security interest in all of their respective personal property, including, but not limited to, all accounts and accounts receivable, general intangibles, inventory, goods, equipment, intellectual property, investment property, and deposit accounts described in the Security Agreement and Schedule 1 to the Security Agreement (collectively, the "Callington/Carlyle Security Agreement").

18.     Lender perfected its security interest in the collateral described in the Callington/Carlyle Security Agreement through the filing of two UCC financing statements with the Delaware Department of State: (1) U.C.C. Initial Filing No. 20230733096 (the "Callington UCC-1"); and (2) U.C.C. Initial Filing No. 20230733195 (the "Carlyle UCC-1").

19.     As further security for Callington's obligations to Lender in connection

with the Callington/Carlyle Loan, Callington executed and granted that certain Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing to Lender dated January 27, 2023, as recorded with the Office of the Judge of Probate of Jefferson County, Alabama, on February 7, 2023 as Instrument No. 2023009940 (the "Callington Mortgage"). The Callington Mortgage conveyed to Lender a security interest in and to the real property and improvements comprising the Callington Facility, as more particularly described in Exhibit A to the Callington Mortgage.

20.     As further security for Carlyle's obligations to Lender in connection with the Callington/Carlyle Loan, Carlyle executed and granted that certain Mortgage, Assignment of Rents and Leases, Security Agreement and Fixture Filing to Lender dated January 27, 2023, as recorded with the Office of the Judge of Probate of Jefferson County, Alabama, on February 7, 2023 as Instrument No. 2023009941 (the "Carlyle Mortgage"). The Carlyle Mortgage conveyed to Lender a security interest in and to the real property and improvements comprising the Carlyle Facility, as more particularly described in Exhibit A to the Carlyle Mortgage.

21.     The Callington/Carlyle Note, the Callington/Carlyle Security Agreement, the Callington UCC-1, the Carlyle UCC-1, the Callington Mortgage, the Carlyle Mortgage, the Callington/Carlyle Forbearance Agreement (as hereinafter defined) and any and all other documents evidencing, describing, securing, or

6

relating to the Callington/Carlyle Loan are herein referred to as the "Callington/Carlyle Loan Documents."  The real and personal property collateral described in the Callington/Carlyle Loan Documents is collectively referred to herein as the "Callington/Carlyle Collateral."

22.     Pursuant to the terms of the Callington/Carlyle Loan Documents, the Callington/Carlyle Collateral secures all of Callington and Carlyle's obligations under the Callington/Carlyle Loan Documents.

**C.     The Contour Borrowers' Events of Default, Acceleration, and Forbearance**

23.     Buckingham, Callington, and Carlyle (collectively, the "Contour Borrowers") have failed to pay and perform their respective obligations under the Buckingham Loan Documents and Callington/Carlyle Loan Documents.

24.     The following defaults occurred and remain outstanding under the Buckingham Loan Documents (collectively, the "Buckingham Pre-Forbearance Defaults"):

   a. Buckingham failed to remit the May 10, 2024 and June 10, 2024 required payments of principal and interest due under the Buckingham Loan Documents; and

   b. As of the March 31, 2024 test date, Buckingham failed to maintain the required Debt Service Coverage Ratio of not less than 1.25 to 1.00 as required by the Buckingham Loan Documents.

7

25.     Likewise, Callington and Carlyle failed to remit the April 10, 2024, May 10, 2024, and June 10, 2024 scheduled payments of principal and interest due under the Callington/Carlyle Loan Documents (collectively, the "Callington/Carlyle Pre-Forbearance Defaults").

26.     On June 10, 2024, Lender gave the Contour Borrowers written notice of the Buckingham Pre-Forbearance Defaults and the Callington/Carlyle Pre-Forbearance Defaults.

27.     As a result of the Pre-Forbearance Defaults, Lender entered into Forbearance Agreements with the Contour Borrowers.

28.     Lender entered into a Forbearance Agreement with Buckingham dated June 25, 2024 (the "Buckingham Forbearance Agreement"), pursuant to which Lender accelerated the entire amount due under the Buckingham Loan Documents but agreed to forbear from exercising its rights and remedies on account of the Buckingham Pre-Forbearance Defaults until August 31, 2024.

29.     Under Section 2(a) of the Buckingham Forbearance Agreement, Buckingham agreed to pay the "May 10, 2024 and June 10, 2024 scheduled monthly payments" that were delinquent and "otherwise bring any amounts due or delinquent under the Note current" no later than June 28, 2024.

30.     Lender entered into a Forbearance Agreement with Callington and Carlyle on June 25, 2024 (the "Callington/Carlyle Forbearance Agreement"),

8

pursuant to which Lender accelerated the entire amount due under the Callington/Carlyle Loan Documents but agreed to forbear from exercising its rights and remedies on account of the Callington/Carlyle Pre-Forbearance Defaults until August 31, 2024.

31. Under Section 2(a) of the Callington/Carlyle Forbearance Agreement, Callington and Carlyle agreed to pay Lender "the April 10, 2024, May 10, 2024, and June 10, 2024 scheduled monthly payments" that were delinquent and "otherwise bring any amounts due or delinquent under the Note current" no later than June 28, 2024.

**D.    The Contour Borrowers' Forbearance Defaults**

32. The Contour Borrowers failed to pay and perform their respective obligations to Lender under the Buckingham Forbearance Agreement and the Callington/Carlyle Forbearance Agreement.

33. The Contour Borrowers also committed new defaults under the Buckingham Loan Documents and the Callington/Carlyle Loan Documents after entering into forbearance agreements with Lender.

34. Buckingham failed to pay and perform its respective obligations under the Buckingham Forbearance Agreement, and added additional defaults under the Buckingham Loan Documents, including, without limitation, the following (collectively, the "Buckingham Forbearance Defaults"):

a. Contour Buckingham failed to remit required payments of principal and interest due under the Buckingham Loan Documents;

b. Contour Buckingham failed to maintain the required Debt Service Coverage Ratio of not less than 1.25 to 1.00 for the March 31, 2024, June 30, 2024, September 30, 2024, and December 31, 2024 calendar quarters; and

c. Contour Buckingham failed to pay the 2023 and 2024 real property taxes assessed against the Buckingham Mortgage Property.

35. Similarly, Callington and Carlyle failed to pay and perform their respective obligations under the Callington/Carlyle Forbearance Agreement and added multiple defaults under the Callington/Carlyle Loan Documents, including, without limitation, the following (collectively, the "Callington/Carlyle Forbearance Defaults"):

a. Callington and Carlyle failed to remit required payments of principal and interest due under the Callington/Carlyle Loan Documents;

b. Callington and Carlyle failed to maintain the required Debt Service Coverage Ratio of not less than 1.25 to 1.00 for the June 30, 2024, September 30, 2024, and December 31, 2024 calendar quarters; and

c. Callington and Carlyle failed to pay the 2023 and 2024 real property taxes assessed against the Callington and Carlyle Mortgaged

Properties.

36. On February 10, 2025, Lender gave the Contour Borrowers written notice of their Forbearance Defaults under both the Buckingham Loan and the Callington/Carlyle Loan. Lender declared the entire amounts outstanding on both loans to be immediately due and payable and demanded payment in full of the Loans from the Contour Borrowers.

37. On June 18, 2025, Lender and the Contour Borrowers entered into a Second Forbearance Agreement, pursuant to which Lender granted the Contour Borrowers until the earlier of August 31, 2025 or the occurrence of any new defaults by the Contour Borrowers to repay the Loans in full. In consideration for Lender's commitment to forbear, the Contour Borrowers agreed to the appointment of a receiver over the Contour Collateral (as defined hereinafter) in the event new defaults occurred and/or they otherwise failed to pay in full their indebtedness to Lender under the Loan Documents within the time period prescribed in the Second Forbearance Agreement.

38. The Contour Borrowers have breached the Second Forbearance Agreement and remain in default under both the Buckingham Loan Documents and Callington/Carlyle Loan Documents (collectively "the Contour Loans"). As a result, all amounts owing under the Contour Loans are immediately due and payable to Lender.

39.    The Contour Loans are secured by the Buckingham Collateral and the Callington/Carlyle Collateral (collectively, the "Contour Collateral").

## E.    Appointment of Receiver

40.    Lender is entitled to the appointment of a receiver under the express terms of the Buckingham Loan Documents and the Callington/Carlyle Loan Documents (collectively, the "Contour Loan Documents").  Specifically, Sections 5.2 of Buckingham Mortgage, the Callington Mortgage, and the Carlyle Mortgage provide:

> Upon the occurrence of any Default, and at any time thereafter, [Lender] shall have all of the following rights and remedies: . . . (d) To apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Subject Property as a matter of strict right and without regard to: (i) the adequacy of the security for the repayment of the Secured Obligations; (ii) the existence of a declaration that the Secured Obligations are immediately due and payable; or (iii) the filing of a notice of default; and Mortgager consents to such appointment.

41.    The Contour Loan Documents are legal, enforceable, and binding contracts, and the Contour Borrowers are each in default of their contractual and legal obligations owing under the Contour Loan Documents.

42.    Additionally, the Contour Borrowers have filed Stipulations for the Appointment of Receiver in this action consenting to the relief requested in the Receiver Motion.

43.    The appointment of a receiver is appropriate where, as here, parties have

12

contractually agreed to a receivership, particularly when, as in this instance, the receiver provisions are clear and unambiguous, and the contracting parties are sophisticated.

44.    Unless a receiver is appointed, Lender will suffer irreparable harm. Additionally, no adequate legal remedy exists under the circumstances.

45.    Lender and all stakeholders in the Facilities, including the residents, will benefit from the appointment of a receiver experienced in operating, stabilizing and restructuring distressed multi-family properties, under the oversight of this court.  Not only will this help preserve the value of the Contour Collateral and improve the marketability of the Facilities as a going concern, but the appointment of a receiver will provide a continuity of service to the residents through any transition period.

46.    Lender has proven its entitlement to the appointment of a receiver to ensure the economic and efficient operation of the Facilities given that: (a) Lender has a clear contractual right to be protected by the appointment of a receiver; (b) there exists imminent danger that the Facilities or other Contour Collateral will cease operations or diminish in value; (c) legal remedies are inadequate to satisfy Lender's claims; (d) no less drastic equitable remedy exists; and (e) the benefits of the appointment of a receiver outweigh any potential harm flowing therefrom.

47.    Farbman Group ("Receiver") is qualified to serve as receiver in this matter and has the requisite experience and qualifications to serve as receiver of the

Facilities and other Contour Collateral pursuant to the terms of this Order.

48.     Jonathon S. Margolis, Senior Vice President of Asset Management at Farbman Group ("Margolis"), is similarly qualified and will be responsible in directing the Receiver's duties under this Order.

## II.     ORDER

Based on these findings and conclusions, it is ORDERED that the Motion to Appoint Receiver (Doc. 2) is GRANTED.  Accordingly, it is further ORDERED that:

A.     The court APPOINTS Farbman Group as the Receiver over the Receivership Estate (as defined below).

B.     The Receiver shall provide the court with its written acceptance to faithfully perform the Receiver's duties as set forth in this Order, and shall file with the Clerk of the Court a surety bond in the amount of $25,000 to be provided by a corporate surety, guaranteeing performance of the Receiver's duties and obligations, the bond to be payable to this court for loss due to the acts of all agents, servants, or employees of the Receiver.

### The Receivership Estate

C.     Upon entry of this Order and the Receiver's acceptance of its appointment as receiver of the Receivership Estate (as defined below) and posting of the required bond, the Receiver is directed and empowered to take from the Contour Borrowers all rights and powers of the Contour Borrowers with respect to the

14

Facilities, and their administration and operation, including:

i.    the Contour Collateral (as defined hereinabove);

ii.   any and all real or personal property used in or related to the maintenance and operation of the Facilities, including but not limited to all equipment, fixtures, machinery, motor vehicles, automobiles, trucks, other rolling stock, leasehold improvements, tax identification and employer numbers, construction work in progress, supplies, raw materials, inventory, goods, work in process, parts, computers, computer software (including all licenses, leases, documentation, and source codes with respect to the computer software), telecommunication systems, fixtures, furniture, furnishings, office equipment, all tangible property furnished by or used in connection with the Facilities, as well as all rights, easements, and franchises appurtenant thereto (collectively, the "Physical Assets");

iii.  any and all cash, cash equivalents, rents, bank accounts, deposit accounts, credits, prepaid expenses, deposits, deferred charges, advance payments, security deposits, prepaid items, funds, securities, investment accounts, accounts receivable, notes, notes receivable, mortgages, security interests, income, revenues derived from the Facilities, insurance claims, insurance proceeds, any and all civil claims, whether actual, contingent, or otherwise, and any and all other rights to receive payments and/or property used in, generated from, or related to the administration, maintenance, and operation of the Facilities as well as all rights, interests, licenses, and franchises related thereto (collectively, the "Cash Equivalent Assets");

iv.   any and all records, documents, rent rolls, accounting records, contracts, leases, and operating data and/or electronically stored information (including any and all computer operating systems in which such information is or may be stored) relating to the operation and management of the Facilities and the Contour Collateral that is in the possession, custody, or control of the Contour Borrowers (collectively, the "Books and Records");

v.    any and all leases, contracts, licenses, agreements and permits affecting, or related to, the Facilities or their operation (collectively, the "Contracts and Licenses"); and

15

vi.  any and all of the internet domain names, post office box numbers, telephone and facsimile numbers, and any and all other listings and numbers used by the Contour Borrowers in connection with the operation and management of the Facilities (collectively, the "Contact Information Assets"; and together with the Contour Collateral, Physical Assets, Cash Equivalent Assets, Books and Records, and Contracts and Licenses, the "Receivership Estate").

D.  The Contour Borrowers and their successors, assigns, agents, officers, directors, stockholders, members, managers, employees, attorneys, accountants, anyone acting for or in concert with the Contour Borrowers, and any persons or entities, including banks, financial or depository institutions, receiving notice of this Order and having possession or control of the Contour Collateral, Books and Records, Cash Equivalent Assets, Contracts, Licenses, Contact Information Assets, the Facilities, and/or any and all Physical Assets are hereby ordered to immediately deliver over to the Receiver: (1) full access to all Books and Records; (2) full and exclusive control over any and all Cash Equivalent Assets (including any information required by a bank or financial or depository institution to enable the Receiver to take exclusive control over any and all Cash Equivalent Assets, e.g. access to online banking), Contracts and Licenses, and Contact Information Assets; and (3) full access to and exclusive control over any and all Physical Assets and the Contour Collateral.

## The Receiver's Authority and Power

E.  Upon the acceptance by the Receiver of its appointment pursuant to this Order, and the posting of the required bond, the Receiver is granted the full power

16

and authority to control, manage, administer, operate, and protect the Receivership

Estate, and is hereby specifically vested with all statutory and common law powers,

rights, and privileges of a receiver necessary to accomplish the purpose of this

receivership.

F. The Receiver is to operate and administer the Receivership Estate in an

economical and efficient manner in compliance with the terms and conditions of the

Contour Loan Documents (to the extent reasonably feasible) and applicable law. The

Receiver is hereby authorized and directed to recover, collect, operate, maintain,

preserve, and manage the Receivership Estate in the best interests of the Receivership

Estate's creditors, and to take all action deemed reasonable and necessary to ensure

compliance with all applicable requirements imposed by local, state, or federal law.

G. To that end, by this Order, the court intends to give, and does hereby

give, the Receiver the full power and authority to fulfill its obligations as Receiver of

the Receivership Estate, including, but not limited to, the sole and exclusive right and

authority to:

i. take complete and exclusive possession, control, and custody of and to exclusively run, operate, administer, manage, and perform all acts necessary to operate the Receivership Estate in the ordinary course of business, in accordance with the provisions of the Contour Loan Documents and applicable local, state and federal law, including but not limited to entering into, modifying, and administering contracts and agreements for the provision of accommodations and related services to current and prospective residents of the Facilities;

ii. take possession of all inventory, equipment, and improvements constituting the Facilities, and all books, records, and personal property

relating to the Facilities, wherever located;

iii.  take possession of all bank accounts containing funds associated with the Facilities, wherever located, and to open, transfer, and change all bank and trade accounts relating to the Facilities and the Contour Collateral, including accounts to which residents of the Facilities or other third-party payors make payment so that all such accounts are in the name of the Receiver;

iv.  conduct an inventory of all personal property included in the Facilities;

v.  exercise all rights as to ownership of the Facilities subject to the limitations set forth herein;

vi.  implement operational efficiencies and revenue enhancement programs;

vii.  fix, charge, revise, raise, and maintain rates and charges for services furnished by the Receivership Estate;

viii.  collect rents and revenues derived from the Receivership Estate and apply those rents and revenues to the expenses of operating and maintaining the Receivership Estate in such order and amount as the Receiver, in its business judgment, deems prudent and appropriate, with available resources then applied in such order as required under the Contour Loan Documents;

ix.  make any reasonable reductions or revisions in the Receivership Estate's operating expenses, whether or not in the ordinary course of business;

x.  manage, operate, maintain, and otherwise control all of the Contour Collateral as necessary to prevent diminution of the Contour Collateral's value including, but not limited to: (a) the receipt, collection, possession, and preservation of all accounts, incomes, profits, rents, and revenues; (b) subject to available resources in the Receivership Estate, from the date of this Order, the payment of taxes, insurance, utility charges, and other expenses and costs incurred in managing and preserving the Facilities and the Contour Collateral, including any past due amounts necessary to restore services, coverage or good standing; (c) if determined appropriate, the right to inspect or receive documents necessary for determining, investigating, reporting tax obligations and filing tax returns (provided, however, that the Receiver shall not be obligated or required by this Order to file tax returns on behalf of the Contour Borrowers); and (f) exercising any intangible rights;

xi.  receive, collect, take possession of, and preserve all accounts, incomes, profits, and other revenues generated from and by the Receivership

        Estate, subject to the requirements of the Contour Loan Documents;

xii.    terminate or modify any currently existing written or oral contract (other than the Contour Loan Documents or tenant leases), with any and all damages arising therefrom to be paid with revenues derived from the Receivership Estate in such amounts and at such times as the Receiver deems prudent in its business judgment;

xiii.    assume and assign any currently existing leases and/or written or oral contracts in accordance with the terms of this Order;

xiv.    enter into new contracts on behalf of the Receivership Estate for goods or services that the Receiver, in its business judgment, deems necessary or advisable for the operation of the Receivership Estate;

xv.    file, investigate, institute, prosecute, defend, compromise, adjust, or intervene in any action or proceeding, legal, equitable, or otherwise, before this court or any other court, agency, or tribunal, as the Receiver may deem, in its sole business judgment, to be necessary and proper for the protection, maintenance, enhancement, and/or preservation of the Receivership Estate, or to further the provisions of this Order;

xvi.    investigate and determine the nature and extent of any and all prior expenditures that may have been improperly classified and take all reasonable and necessary action to have such expenses properly classified;

xvii.    investigate and determine whether all revenues have been properly accounted for and to take all reasonable and necessary action to recover any and all revenues that have been diverted away from the Receivership Estate or otherwise improperly applied and/or handled;

xviii.    institute, prosecute, defend, and settle such legal proceedings as the Receiver deems necessary relating to the recovery, collection, maintenance, protection, or proper care of the Receivership Estate, and to employ counsel therefore;

xix.    hire, discharge, manage, and control such employees and/or staff at the Facilities, except as prohibited by law, as the Receiver determines necessary or advisable;

xx.    permit the Lender and its respective agents and independent contractors and/or professionals to inspect fully the Facilities, their accounts, and all books and records, including records as to the maintenance of any portion of the Facilities, upon reasonable notice to the Receiver;

xxi.    take all such actions and expend all such sums as may be necessary and prudent in the Receiver's business judgment to obtain, maintain in effect, restore, or transfer all Licenses, insurance, zoning approvals and other approvals in an effort to ensure that the Receivership Estate may

          continue to be used for its intended purpose;

xxii.   enter into and/or terminate, modify, assume, and renew contracts for any insurance with the same or different insurance providers that the Receiver believes, in its sole business judgment, is necessary or advisable for the continued operation of the Receivership Estate in the ordinary course of business as a going concern;

xxiii.  terminate or modify, as the Receiver deems prudent in the exercise of its business judgment, any business activities of, or services provided at or in connection with, the Receivership Estate;

xxiv.  engage professionals in the ordinary course of the Facilities' business, including, but not limited to, attorneys, accountants, communication consultants, investment bankers, consultants, brokers, forensic and investigative accountants, engineers, managers and any other service providers (each a "Professional" or "Service Provider" as applicable) as the Receiver may, subject to the approval of the Lender, deem necessary or advisable to assist the Receiver in the performance of its duties under this Order and agree to such terms (including financial terms) with respect to such engagements as the Receiver may deem necessary or advisable, without further order of this court and with the reasonable fees and expenses of such Professionals and Service Providers to be payable on a current basis from the Receivership Estate as operating expenses, subject to the provisions of Section FF below;

xxv.   comply with all requirements of all governmental authorities;

xxvi.  change any and all locks on the Receivership Estate;

xxvii.  generally, do, execute, and perform any other act, deed, matter, or thing whatsoever that the Receiver reasonably believes ought to be done, executed, and performed in and about, or with respect to, the Receivership Estate;

xxviii. take all actions necessary and appropriate to preserve, maintain, renew, and protect all leases, contracts and licenses affecting, or related to, the Facilities or their operation to the extent the Receiver in its sole discretion determines that the said leases, contracts and licenses should be preserved, maintained, renewed, and protected, including making all necessary filings with the regulatory bodies and agencies with jurisdiction over the Facilities;

xxix.  execute such documents as are necessary to transfer all leases, contracts and licenses affecting, or related to, the Facilities or their operation to any purchaser of the Facilities, including a purchaser at a non-judicial foreclosure sale which may be conducted by the Lender;

xxx.  pay itself and any Professionals and/or Service Providers such fees (and

reimburse such expenses) as are payable in accordance with the terms of this Order, absent contrary order of this court;

xxxi. request and receive advances from the Lender on terms mutually agreeable to the Lender and the Receiver for expenses incurred by the Receiver relating to the care, preservation and maintenance of the Receivership Estate. All advances made by the Lender to the Receiver shall be deemed advances under and pursuant to the Contour Loan Documents to protect and preserve the Lender's interest in the Contour Collateral, shall be secured by all of the Contour Collateral, and shall have administrative claim priority against the Receivership Estate ahead of claims arising prior to the Receiver's appointment. Alternatively, the Receiver may obtain advances from a third party lender for expenses incurred by the Receiver relating to the care, preservation and maintenance of the Receivership Estate; provided, however, that any third party advance (and all rights of the third party lender) shall be subordinate in all respects to the Lender's right to payment under the Contour Loan Documents and the Lender's interest in the Contour Collateral, unless the Lender agrees in writing to alternative treatment; and

xxxii. generally do, execute, and perform any other act, deed, matter, or thing whatsoever that the Receiver reasonably believes ought to be done, executed, and performed in and about, or with respect to, the Receivership Estate; provided, however, that notwithstanding the Receiver's power and authority to undertake any of the foregoing, the Receiver shall have no obligation to do so if the Receiver believes, in its sole business judgment, such action would not be in the best interest of the Receivership Estate or if the Receiver lacks the resources in the Receivership Estate to fund such action after payment of other expenses of the Receivership deemed by the Receiver to be more critical.

H. The Receiver shall have the power, in accordance with applicable law, to avoid fraudulent transfers or conveyances of any of the Contour Borrowers' assets or fraudulent obligations incurred by the Contour Borrowers prior to the appointment of the Receiver.

I. The Receiver shall be bound by all applicable laws.

J.      Subject to court approval and compliance with 28 U.S.C. § 2001, the Receiver shall have the power to market for sale and sell all or any part of the Receivership Estate.

## The Receiver Shall Have Exclusive Control Over the Receivership Estate Without Interference

K.      The Receiver shall have full and sole control over all of the Receivership Estate, including all authorizations or other documentation necessary or desirable for the Receiver to administer, maintain, and operate the Receivership Estate in accordance with applicable law.

L.      The Contour Borrowers are hereby enjoined from administering, operating, directing, controlling or managing the business and affairs of the Receivership Estate, which authority has been vested solely and exclusively in the Receiver under this Order.

M.      Unless otherwise approved or directed by the Receiver, the Contour Borrowers and all persons, firms, corporations and associations in any way related to, linked to, or associated with the Contour Borrowers, along with their officers, directors, stockholders, members, managers, subscribers, agents and all other persons in active concert or participation with them, are prohibited and enjoined from: (i) the transaction of further business with the Receivership Estate; (ii) the waste, transfer, or disposition of property of the Receivership Estate; (iii) doing any action or thing

22

whatsoever to interfere with the taking control, possession and administration by the Receiver of the Receivership Estate; (iv) interfering in any way with the exclusive jurisdiction of this court over the Receivership Estate; (v) the institution or further prosecution of any action or proceedings against the Receiver, the Receivership Estate or its assets, except before the court; (vi) the filing of any petition for relief against or on behalf of the Contour Borrowers pursuant to Title 11 of the United States Code; (vii) withholding from the Receiver books, accounts, documents, records or any other part of the Receivership Estate relating to the business of the Receivership Estate; and (viii) any other threatened or contemplated action that might lessen the value of the Receivership Estate, impede the Receiver's discharge of its duties, prejudice the rights of the Lender or other creditors, or interfere with any proceeding initiated by the Receiver.

N.     The Contour Borrowers, along with their managers, agents, employees, officials, officers and successors and assigns, shall fully cooperate with the Receiver in all matters related to this Order and the operation and administration of the Receivership Estate, including but not limited to executing all documents, providing all authorizations, and taking any other action that the Receiver believes is necessary or desirable to facilitate the operation of the Receivership Estate or to exercise its powers as Receiver.

O.     The Receiver's full and sole control of the Receivership Estate shall not

in any way diminish the duties and cooperation required by the Contour Borrowers, along with their agents, employees, officials, officers and successors and assigns, under this Order.

P. Upon notice of this Order, any person or entity, bank, financial or depository institution, or any employee or agent of such person or entity, shall be deemed to be required to comply with all terms of this Order until this court shall have relieved such person from the terms of this Order by subsequent order. Any vendors or utility provides of the Contour Borrowers with notice of this Order are prohibited from terminating services due to pre-receivership liabilities absent further order of the court.

Q. All civil legal proceedings of any nature related to any Receivership Property are stayed in their entirety until further Order of this court.

### The Receiver's Rights and Obligations

R. The Receiver (including Margolis) and any other Professional or Service Provider engaged by the Receiver (collectively, the "Receiver Affiliates") shall owe duties only to the Receivership Estate and the court, but not to the Lender, the Contour Borrowers, or any other third party. The Receiver's retention of the law firm of Epstein Becker Green to assist and represent the Receiver is hereby approved. The Receiver is, without further approval of the court, authorized to engage a qualified property management company or companies to manage the Facilities

should it determine that it is in the best interests of the Receivership Estate to replace the current management company.

S.      The Receiver shall make an accounting and keep accurate records concerning the Receivership Estate, including the actual revenues collected, any protective advances made by the Lender to the Receivership Estate, and expenses paid each month, and make such records available to the Lender, the Contour Borrowers and the court during normal business hours and upon reasonable notice.

T.      The Receiver shall prepare an annual operating budget after reviewing the Contour Borrowers' operations, which budget shall include projected revenues, operating expenses and ongoing reasonable and necessary professional fees and expenses (including fees of the Receiver and any Receiver Affiliates) and shall be subject to approval by Lender.  The Receiver shall update said budget from time-to-time as needed and shall not materially exceed the budget without the prior written approval Lender.  In the event Lender declines to approve any budget, expense or indebtedness that the Receiver believes is in the best interests of the Receivership Estate, the Receiver may petition the court for approval to pay or incur same.

U.      The Receiver shall permit the Lender and its respective agents and independent contractors, to inspect the Receivership Estate and the Receiver's records with respect to the Receivership Estate during normal business hours and upon reasonable notice.

V.     The Receiver shall review whether the Receivership Estate is in compliance with the requirements established with respect to the Contour Loans, as set forth in the Contour Loan Documents, and to the extent feasible shall make reasonable efforts to regain or maintain compliance with such requirements.

W.     The Receiver shall have the absolute right, but not the duty, to change any accounts or other investment funds in which the Cash Equivalent Assets are currently maintained to any other account or fund if such change is in compliance with the terms of the Contour Loan Documents and this Order.

X.     The Receiver and Receiver Affiliates  shall not have personal liability for any liabilities of the Receivership Estate or obligations incurred pursuant to the terms of this Order or any other order of this court and, in the event any such liability or obligation is at any time asserted against the Receiver Affiliates, the Receiver may use revenues derived from the Receivership Estate to contest any such claimed liability and to pay, compromise, settle or discharge such claimed liability on terms reasonably satisfactory to the Receiver, and such expenses shall constitute operating expenses of the Receivership Estate.

Y.     The Receiver and Receiver Affiliates shall perform the duties and obligations imposed on them by this Order with reasonable diligence and care under the circumstances and neither the Receiver nor any of the Receiver Affiliates shall be personally liable to the Lender, the Contour Borrowers or any third party except for

such of their own acts as shall constitute fraudulent or willful misconduct as determined by a Final Order. For purposes of this Order, "Final Order" shall mean an order or judgment of this court as to which: (a) the time to appeal, petition for certiorari, or file a motion for re-argument or rehearing has expired and as to which no appeal, petition for certiorari, or motion for re- argument or rehearing shall then be pending; or (b) in the event that an appeal, writ for certiorari, re-argument or rehearing has been sought, the time to take any further appeal, petition for certiorari, or request for re-argument or rehearing shall have expired; provided, however, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure may be filed with respect to such order, as long as such a motion has not actually been filed.

Z. The Receiver and Receiver Affiliates shall be defended, held harmless, and indemnified from time to time by the Receivership Estate against any and all losses, claims, costs, expenses and liabilities (including legal fees, costs and expenses), and any costs of defending any action, suit, proceeding or investigation to which the Receiver or Receiver Affiliates may be subject, by reason of their execution in good faith of their duties under this Order or any other order of this court; provided, however, such indemnity shall be payable solely from the Receivership Estate.

AA. At a reasonable expense to the Receivership Estate, the Receiver may

27

obtain insurance, or be added to existing insurance policies, against claims for liability, damages awards and settlements, for the benefit of the Receiver, the Receiver Affiliates and the Receivership Estate.

BB.   Any actions or proceedings which involve the Receiver, any Receiver Affiliate, or the Receivership Estate or relating in any way to the Receivership Estate or the administration, operation or control of the Receivership Estate by the Receiver shall be filed in this court, and no judgment of any party other than the Lender shall be enforced against the Receivership Estate absent further order of this court.

CC.   As an appointee of this court, the Receiver and Receiver Affiliates shall be entitled to judicial immunity as provided under applicable law.

DD.   The Receivership Estate shall be subject to and liable for only such local, state, and federal taxes that accrue during the pendency of the Receivership and for which the Receivership Estate would have become liable when operated by the Contour Borrowers.

EE.   Notwithstanding anything in this Order to the contrary, nothing contained in this Order shall be deemed to be either an assumption of liability by the Receiver or the Lender, or a requirement that the Receiver or the Lender fund the costs of this receivership or the operating expenses of the Facilities, which costs and expenses shall be paid exclusively from the revenues derived from the Facilities and the Contour Collateral and the assets comprising the Facilities and the Contour

Collateral, which revenues and assets, including accounts and deposit accounts of the Contour Borrowers or proceeds from the sale of the Contour Collateral, are vested in the Receiver pursuant to this Order.

### Payment of Fees and Costs

FF.    The Receiver shall file applications for payment of the Receiver's and Receiver Affiliates fees and expenses on the twentieth (20th) day of each calendar month.  Unless a party files a written objection to the application for payment within fourteen (14) calendar days of the filing of the application for payment, the application shall be deemed approved on an interim basis and the Receiver is authorized to pay the fees and expenses of the Receiver and the Receiver Affiliates as necessary expenses of operation of the Facilities without further order of the court, subject to the court's final approval upon the Receiver's final accounting and the court's discharge of the Receiver.

GG.    For its services under this Order, not including any fees or expenses of any Receiver Affiliates (which shall be paid as operating expenses of the Receivership Estate as provided herein), the Receiver shall receive a monthly fee equal to one percent (1%) of the monthly gross revenue from the Facilities, plus the Receiver's actual, reasonable and necessary out-of-pocket expenses directly related to the performance of the Receiver's duties under this Order, including, but not limited to, local housing, meals, travel, local transportation, and transportation to and

29

from (i) the Facilities and/or the court and (ii) the Receiver's primary office or residence.

HH.   Fees and expenses payable to the Receiver and Receiver Affiliates under this Order shall be treated as priority administrative claims against the Receivership Estate, and payment of such amounts in accordance with this order shall take priority over payment of any claims arising prior to the date on which the Receiver is appointed (including, but not limited to, claims of the Lender with respect to the Loans).

### Administrative Matters

II.   The Receiver may only be removed by order of this court upon appropriate motion, notice, and hearing, after a showing of good cause by the Lender or the Contour Borrowers.

JJ.   Within 14 days of the Receiver's acceptance of appointment, the Contour Borrowers and, to the extent the information is in the possession of a management company (the "Manager"), Manager shall provide the Receiver with a sworn statement listing: (a) the identity, location and estimated value of all property, books, records, contracts and other assets related to and/or appurtenant to the Facilities; (b) the names, identities, and contact information (telephone, mailing address, and email address) of all management companies, managers, employees, contractors, subcontractors, accountants, attorneys, other personnel, and any other

agents providing goods or services to or in connection with the Facilities; (c) a complete inventory of the Facilities' assets and liabilities, including any ongoing litigation related to the Facilities or their operations; and (d) copies of all Contracts and Licenses, agreements, leases, and service agreements related to the Facilities.

KK.   Starting thirty (30) days after entry of this Order, and within twenty (20) days after the end of each calendar month thereafter, the Receiver shall file with this court monthly reports concerning the financial results of the operation of the Receivership Estate.

LL.   The Receiver may seek direction from this court on any matter related to this Order, including, but not limited to, relief from or modification of the provisions of this Order.

MM.  The Receiver may seek such other and further orders of this court as it deems necessary or expedient to carry out its duties and responsibilities under this Order.

NN.   The Receiver may resign and be discharged of its responsibilities at any time by giving thirty (30) days' prior written notice to this court; provided, however, that the Receiver may petition this court to approve such resignation and discharge upon shorter notice for good cause shown.

OO.   At the completion of its duties set forth in this Order, or at such earlier time as the Receiver has determined that the purposes of this Order may no longer be

effectively fulfilled by the Receiver, the Receiver may file a motion seeking to terminate its responsibilities as Receiver and the court supervision of the Receivership Estate.

PP. Upon the satisfaction and discharge of all indebtedness and obligations secured under the Contour Loan Documents, the court shall enter an Order, as appropriate, terminating the receivership.

QQ. As needed until the Receiver is fully ready to begin exercising its authorities and powers as set forth above, the Contour Borrowers, and Manager shall avoid harm to the Receivership Estate and ensure the Receiver can carry out its responsibilities as required by this Order.

RR. The Contour Borrowers, Manager and their successors, assigns, agents, employees, members, attorneys, or anyone acting for or in concert with them shall be prohibited from: (i) possessing or managing the Facilities (unless requested or approved by the Receiver) and from interfering in any way with the possession or management of the Facilities by the Receiver; (ii) collecting, withdrawing, transferring, conveying, concealing, or otherwise disposing of the Contour Collateral, including any revenues and profits derived therefrom, during and pending the appointment of the Receiver; (iii) removing any property from the Facilities and from removing, destroying, concealing, changing, or altering in any manner any of the books or records relating to the ownership, possession, or operating of the Facilities

and other Contour Collateral.

SS.     Further, the Contour Borrowers are required to pay to the Receiver any rents, revenues and other cash collateral in their possession or control derived from the Facilities and other Contour Collateral, and are required to immediately pay and turn over to the Receiver and to perform all other acts necessary to transfer to the Receiver all funds on hand in cash and all funds held in deposit accounts for the benefit of the Facilities or arising from the ownership, possession, or operating of the Facilities and all accounts, accounts receivable, and any other collectibles, and all keys, books, records, equipment, and all things in any manner related to the ownership, possession, or operation of the Facilities.  For the avoidance of doubt, and notwithstanding anything to the contrary in this Order, the Lender shall continue to administer and control all funds and accounts established under the terms of the Contour Loan Documents.

TT.     Further, the Contour Borrowers and any other party with notice of this court's order are prohibited from prosecuting any claim against the Receiver or the Contour Collateral, other than in this action and only after a proper motion is filed and an order entered allowing such party to file such a claim herein.

### Effect of Order and Jurisdiction

UU.   Except as expressly set forth in this Order, the terms and conditions of the Contour Loan Documents and any documents related to the Contour Loan

Documents, including the rights, property, powers, authority and assets conferred in such documents, remain in full force and effect.

VV. Except as expressly set forth in this Order, nothing in this Order shall act to divest in any way the Lender of any collateral, property or asset under the control of the Lender or enjoin or otherwise prohibit the Lender from pursuing any other remedies as provided in the Contour Loan Documents. All of the Lender's claims and causes of action against the Contour Borrowers shall be preserved and shall not be deemed waived, compromised, released or prejudiced in any way by this receivership proceeding. This receivership proceeding shall not bar or preclude the Lender, under the doctrines of collateral estoppel, res judicata, or any other doctrine or preclusion, from asserting or maintaining any claims or causes of action against the Contour Borrowers, including, but not limited to, any claims or causes of action for recovery of amounts owed under the Contour Loan Documents or proceedings by foreclosure, either non-judicial or judicial, or otherwise to sell the Contour Collateral or any portion of the Contour Collateral.

WW. Nothing in this Order shall relieve the Contour Borrowers or the Facilities of any obligation or liability under any existing judgment, order or decree.

XX. Until the Receiver is discharged and this receivership is terminated, the court retains jurisdiction over this matter to: (i) amend, supplement or delete any provision of this Order; (ii) enforce compliance with or to punish violations of this

Order; and (iii) order any additional actions or remedies as may be appropriate or reasonably necessary.

YY.    The reversal or modification on appeal of this Order shall not affect the validity of any actions taken in good faith by the Receiver, the payment of compensation to which the Receiver or Receiver Affiliates are entitled, or the payment of expenses incurred by the Receiver or Receiver Affiliates pursuant to this Order.

ZZ.    This Order shall be immediately effective upon its entry and shall continue until further order of this court.

DONE and ORDERED on December 23, 2025.

_____

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

FILED

2025 Dec-30 AM 11:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **WELLS FARGO BANK, N.A.,**     ) <br><br> **Plaintiff,**     ) <br> ) <br> **v.**     ) <br> ) <br> **CONTOUR BUCKINGHAM AL LLC,** ) <br> **CONTOUR CALLINGTON AL, LLC**  ) <br> **and**     ) <br> **CONTOUR CARLYLE AL LLC,**     ) <br> ) <br> ) <br> **Defendant.**     ) | **CIVIL ACTION NO:** <br> **2:25-cv-02136-GMB** |

## NOTICE OF FILING OF RECEIVER'S ACCEPTANCE OF APPOINTMENT AND NOTICE OF POSTING BOND

PLEASE TAKE NOTICE that, pursuant to Paragraph B on Page 12 of the *Agreed Order Appointing Receiver* (the "***Receivership Order***"), Farbman Group (the "***Receiver***") accepts its appointment as receiver pursuant to the Receivership Order, as indicated in the *Receiver's Acceptance of Appointment and Notice of Posting Bond* attached to this notice as **Exhibit A**.

December 30, 2025.

Respectfully submitted,

**EPSTEIN BECKER & GREEN, P.C.**

BY: */s/ Ryan K. Cochran*
**Ryan K. Cochran**
**Bar Number: ASB-1748-N70C**
Epstein Becker & Green, P.C.
1222 Demonbreun Street, Suite 1400
Nashville, TN 37203
Telephone: 615.564.6060
rcochran@ebglaw.com

ATTORNEY FOR COURT
APPOINTED RECEIVER,
FARBMAN GROUP

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have delivered a true and copy of the document, either via U.S. mail postage prepaid or via electronic mail, as follows:

Via CM/ECF:

Chris Glenos
Macy Walters
Bradley Arant Boult Commings
One Federal Place
1819 Fifth Avenue
North Birmingham, AL 35203-2104

2

Frank C. Galloway III
David Schoel
The Woodcrest Group, LLC
2200 Woodcrest Place, Suite 315
Birmingham, AL 35209
fcg3@woodcrestgroup.law
dds@woodcrestgroup.law

Via Electronic Mail:

C. David Bargamian
Kerr, Russell and Weber, PLC
500 Woodward and Weber, PLC
Detroit, MI 48266
dbargamian@kerr-russell.com


                                    /s/ Ryan K. Cochran
                                    Ryan K. Cochran

FILED

2025 Dec-30  AM 11:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# Exhibit A
## Receiver's Acceptance and Notice of Posting Bond

Docusign Envelope ID: 86C5D63A-3A28-4522-A008-BB64FC4D51B3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO: |
| | ) | 2:25-cv-02136-GMB |
| CONTOUR BUCKINGHAM AL LLC, | ) | |
| CONTOUR CALLINGTON AL, LLC and | ) | |
| CONTOUR CARLYLE AL LLC, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## RECEIVER'S ACCEPTANCE OF APPOINTMENT AND NOTICE OF POSTING BOND

**PLEASE TAKE NOTICE** that, pursuant to Paragraph B on Page 12 of the *Agreed Order Appointing Receiver* (the "***Receivership Order***"), Farbman Group (the "***Receiver***") accepts its appointment as receiver over the Receivership Estate (as defined in the Receivership Order).

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Receivership Order, the Receiver has caused to be posted with the Clerk of this Court a bond in the amount of Twenty-Five Thousand Dollars ($25,000.00) (the "***Receiver's Bond***"). A true and correct copy of the Receiver's Bond is attached hereto as **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that the Receiver does swear and affirm that it will faithfully perform the duties as set forth in the Receivership Order.

Dated: December 30, 2025

FARBMAN GROUP

JONATHON MARGOLIS

By: Jonathon S. Margolis
Its: Agent

**Exhibit 1**
**Receiver's Bond**



# Western Surety Company

STATE OF _Alabama_ }

COUNTY OF _Jefferson_ } ss

IN THE _District_ COURT

No. _2:25-cv-2136-GMB_

Bond No. _73779331_

Wells Fargo Bank, N.A.

VS.    Plaintiff(s)

Contour Buckingham AL, LLC Et Al
          Defendant(s)

**BOND OF RECEIVER**

Effective Date: _December 24th, 2025_

KNOW ALL PERSONS BY THESE PRESENTS:

That we, _Jonathon S. Margolis of Farbman Group_

as Principal, and WESTERN SURETY COMPANY, a corporation duly licensed to do surety business in the

State of _Alabama_ , as Surety, are held and firmly bound unto

_US District Court_ in the sum of

_Twenty Five Thousand and 00/100_ DOLLARS ($ _25,000.00_ ),
for the payment of which well and truly to be made, we bind ourselves and our legal representatives, firmly
by these presents.

THE CONDITION OF THE ABOVE OBLIGATION IS SUCH, That whereas on the _23rd_ day of
_December_ , _2025_ , the above named Principal was appointed Receiver in the above
entitled matter.

NOW THEREFORE, if the Principal shall faithfully discharge the duties of Receiver in said action, and
shall obey the orders of the Court therein, then this obligation to be null and void, otherwise to remain in full
force and effect. In no event shall the total liability of the Surety for all breaches of the condition of this
bond exceed the amount stated above.

Dated this _29th_ day of _December_ , _2025_ .

_____
                                              Principal

WESTERN SURETY COMPANY

By _____
          Larry Kasten, Vice President

Form F6948-12-2019

ACKNOWLEDGMENT OF SURETY

STATE OF SOUTH DAKOTA }
                            } ss
COUNTY OF MINNEHAHA }

On this ___29th___ day of _____December_____, ___2025___, before me, a Notary Public in and for

said County, personally appeared _____Larry Kasten_____

personally known to me, who being by me duly sworn, did say that he is the aforesaid officer of WESTERN SURETY COMPANY of Sioux Falls, South Dakota, a corporation duly organized and existing under the laws of the State of South Dakota, that the seal affixed to the foregoing instrument is the corporate seal of said corporation, that the said instrument was signed, sealed and executed in behalf of said corporation by authority of its Board of Directors, and further acknowledge that the said instrument and the execution thereof to be voluntary act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal the day and year last above written.

My commission expires

_____August 11__, __2028___

S. PETRIK
NOTARY PUBLIC
SEAL  SOUTH DAKOTA  SEAL

_____
S. Petrik
                                  Notary Public

# Western Surety Company

## POWER OF ATTORNEY

### KNOW ALL MEN BY THESE PRESENTS:

That WESTERN SURETY COMPANY, a corporation organized and existing under the laws of the State of South Dakota, and authorized and licensed to do business in the States of Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the United States of America, does hereby make, constitute and appoint

Larry Kasten of Sioux Falls

State of South Dakota , its regularly elected Vice President

as Attorney-in-Fact, with full power and authority hereby conferred upon him to sign, execute, acknowledge and deliver for and on its behalf as Surety and as its act and deed, the following bond:

One Receiver Wells Fargo Bank, N.A. Vs. Contour Buckingham AL, LLC Et Al

bond with bond number 73779331

for Jonathon S. Margolis of Farbman Group

as Principal in the penalty amount not to exceed $ 25,000.00 .

Western Surety Company further certifies that the following is a true and exact copy of Section 7 of the by-laws of Western Surety Company duly adopted and now in force, to-wit:

Section 7. All bonds, policies, undertakings, Powers of Attorney, or other obligations of the corporation shall be executed in the corporate name of the Company by the President, Secretary, any Assistant Secretary, Treasurer, or any Vice President, or by such other officers as the Board of Directors may authorize. The President, any Vice President, Secretary, any Assistant Secretary, or the Treasurer may appoint Attorneys-in-Fact or agents who shall have authority to issue bonds, policies, or undertakings in the name of the Company. The corporate seal is not necessary for the validity of any bonds, policies, undertakings, Powers of Attorney or other obligations of the corporation. The signature of any such officer and the corporate seal may be printed by facsimile.

This Power of Attorney may be signed by digital signature and sealed by a digital or otherwise electronic-formatted corporate seal under and by the authority of the following Resolution adopted by the Board of Directors of the Company by unanimous written consent dated the 27th day of April, 2022:

"RESOLVED: That it is in the best interest of the Company to periodically ratify and confirm any corporate documents signed by digital signatures and to ratify and confirm the use of a digital or otherwise electronic-formatted corporate seal, each to be considered the act and deed of the Company."

In Witness Whereof, the said WESTERN SURETY COMPANY has caused these presents to be executed by its Vice President with the corporate seal affixed this 29th day of December 2025

ATTEST

L. Bauder, Assistant Secretary

WESTERN SURETY COMPANY

By
Larry Kasten, Vice President

STATE OF SOUTH DAKOTA }
                         } ss
COUNTY OF MINNEHAHA     }

On this 29th day of December 2025 before me, a Notary Public, personally appeared Larry Kasten and L. Bauder who, being by me duly sworn, acknowledged that they signed the above Power of Attorney as Vice President and Assistant Secretary, respectively, of the said WESTERN SURETY COMPANY, and acknowledged said instrument to be the voluntary act and deed of said Corporation.

S. GREEN
NOTARY PUBLIC
SOUTH DAKOTA
SEAL

Notary Public

My Commission Expires February 12, 2027

**To validate bond authenticity, go to www.cnasurety.com > Owner/Obligee Services > Validate Bond Coverage.**

Form F9701

# ACORD®

## EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

**DATE (MM/DD/YYYY)**
12/09/2025

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

**PRODUCER NAME, CONTACT PERSON AND ADDRESS** | **PHONE (A/C, No, Ext):** [redacted]
Rhodes Risk Advisors
Greg White
3050 Peachtree Rd NW        Suite 200
Atlanta                                    GA  30305

**FAX (A/C, No):** [redacted]    **E-MAIL ADDRESS:** [redacted]

**COMPANY NAME AND ADDRESS** | **NAIC NO:** 15884
Falls Lake Fire & Casualty Company
5565 Glenridge Connector, Suite 550
Atlanta                                    GA  30342

IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH

**CODE:** | **SUB CODE:**

**AGENCY CUSTOMER ID #:** 00008527

**POLICY TYPE**
Commercial Property

**NAMED INSURED AND ADDRESS**
Contour Callington AL, LLC
40950 Woodward Ave        Suite 300
Bloomfield Hills                          MI  48304

**ADDITIONAL NAMED INSURED(S)**

**LOAN NUMBER** | **POLICY NUMBER** A615624

**EFFECTIVE DATE** 10/07/2025 | **EXPIRATION DATE** 10/07/2026 | ☐ CONTINUED UNTIL TERMINATED IF CHECKED

**THIS REPLACES PRIOR EVIDENCE DATED:**

## PROPERTY INFORMATION        (ACORD 101 may be attached if more space is required)        ☒ BUILDING   OR   ☒ BUSINESS PERSONAL PROPERTY

**LOCATION / DESCRIPTION**
700 Aspen Drive        Park at Callington
Birmingham                      AL  35209

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.  LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION        PERILS INSURED        ☐ BASIC        ☐ BROAD        ☒ SPECIAL

COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE:  $ $50,421,709        BPP: $50,000        DED: 25,000

| | YES | NO | N/A | |
|---|---|---|---|---|
| ☒ BUSINESS INCOME   ☒ RENTAL VALUE | ☒ | | | If YES, LIMIT:  $7,125,000   ☒ Actual Loss Sustained; # of months: |
| BLANKET COVERAGE | | ☒ | | If YES, indicate value(s) reported on property identified above: $ |
| TERRORISM COVERAGE | | ☒ | | Attach Disclosure Notice / DEC |
| IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | ☒ | | |
| IS DOMESTIC TERRORISM EXCLUDED? | | ☒ | | |
| LIMITED FUNGUS COVERAGE | ☒ | | | If YES, LIMIT:  10,000   DED:  25,000 |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | | ☒ | | |
| REPLACEMENT COST | ☒ | | | |
| AGREED VALUE | ☒ | | | |
| COINSURANCE | | ☒ | | If YES,          % |
| EQUIPMENT BREAKDOWN (If Applicable) | ☒ | | | If YES, LIMIT:  7,500,000   DED:  25,000 |
| ORDINANCE OR LAW   - Coverage for loss to undamaged portion of bldg | ☒ | | | If YES, LIMIT:  Included in Building Limit   DED:  25,000 |
| - Demolition Costs | ☒ | | | If YES, LIMIT:  20% per Building, Max. $1M per occ.   DED:  25,000 |
| - Incr. Cost of Construction | ☒ | | | If YES, LIMIT:  Included with Coverage B   DED:  25,000 |
| EARTH MOVEMENT (If Applicable) | | ☒ | | If YES, LIMIT:   DED: |
| FLOOD (If Applicable) | | ☒ | | If YES, LIMIT:   DED: |
| WIND / HAIL INCL   ☒ YES  ☐ NO   Subject to Different Provisions: | ☒ | | | If YES, LIMIT:  Included in Limits   DED:  2%, min $50,000 |
| NAMED STORM INCL   ☒ YES  ☐ NO   Subject to Different Provisions: | ☒ | | | If YES, LIMIT:  Included in Limits   DED:  2%, min $50,000 |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | | | | |

## CANCELLATION

**SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.**

## ADDITIONAL INTEREST

☐ CONTRACT OF SALE    ☐ LENDER'S LOSS PAYABLE    ☐ LOSS PAYEE
☐ MORTGAGEE

**LENDER SERVICING AGENT NAME AND ADDRESS**

**NAME AND ADDRESS**
Farbman Group
28400 Northwestern Hwy.
4th Floor
Southfield                      MI  48034

**AUTHORIZED REPRESENTATIVE**
*[signature]*

© 2003-2015 ACORD CORPORATION.  All rights reserved.

ACORD 28 (2016/03)        The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: 00008527

LOC #:



# ADDITIONAL REMARKS SCHEDULE

Page _____ of _____

**AGENCY**
Rhodes Risk Advisors

**NAMED INSURED**
Contour Crescent

**POLICY NUMBER**

| **CARRIER** | **NAIC CODE** |
|---|---|

**EFFECTIVE DATE:**

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 28    **FORM TITLE:** Evidence of Commercial Property Insurance: Notes

Re: Contour Callington AL, LLC - Park at Callington - 700 Aspen Drive, Birmingham, AL 35209

Extended Period of Indemnity: 365 Days

30 days notice of cancellation, except for 10 days notice of cancellation for non-payment, applies in favor of the Certificate Holder.

Water Damage Deductible: $25,000 per Building

Terrorism Coverage:
Carrier: Convex Insurance UK Limited
Policy Number: TER000284-1025
Effective: 10/07/2025-10/07/2026
Limit: $65,000,000 Any One Occurrence and in the Aggregate.
Deductible: $5,000 any One Occurrence
TIV: $245,861,582

Additional Named Insureds:
Contour Carlyle AL, LLC
Contour Buckingham AL, LLC

**ACORD 101 (2008/01)**

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# ACORD® CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 01/08/2026 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Greg White | | |
|---|---|---|---|---|
| Rhodes Risk Advisors | PHONE (A/C, No, Ext): | ▮▮▮▮ | FAX (A/C, No): | ▮▮▮▮ |
| 3050 Peachtree Rd NW | E-MAIL ADDRESS: | ▮▮▮▮ | | |
| Suite 200 | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| Atlanta                GA  30305 | INSURER A : Hamilton Select Insurance, Inc. | | | 17178 |
| **INSURED** | INSURER B : | | | |
| Contour Carlyle AL, LLC | INSURER C : | | | |
| 40950 Woodward Ave | INSURER D : | | | |
| Suite 300 | INSURER E : | | | |
| Bloomfield Hills        MI  48304 | INSURER F : | | | |

## COVERAGES        CERTIFICATE NUMBER:  25-26                REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** ☐ CLAIMS-MADE ☒ OCCUR ☒ Deductible: $15,000 BI/PD Comb. ☒ Terrorism Excluded  GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PROJECT ☒ LOC ☐ OTHER: | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ Excluded |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** ☐ ANY AUTO ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS ☒ HIRED AUTOS ONLY ☒ NON-OWNED AUTOS ONLY | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | ☒ **UMBRELLA LIAB** ☒ OCCUR ☐ **EXCESS LIAB** ☐ CLAIMS-MADE ☐ DED ☒ RETENTION $ 0 | Y | | ECHS00232955 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE | $ 2,000,000 |
| | | | | | | | AGGREGATE | $ 2,000,000 |
| | | | | | | | Terrorism Excluded | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y/N | N/A | | | | ☐ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Re: Contour Callington, AL LLC - Park at Buckingham - 114 Aspen Circle, Homewood AL, 35209
Additional Named Insureds: Contour Buckingham AL LLC, Contour Carlyle AL LLC

30 days notice of cancellation, except for 10 day notice of cancellation for non-payment, applies in favor of the Certificate Holder. Terrorism included on both GL and Excess policies. Certificate Holder is included as Additional Insured as respects the General Liability policy, pursuant to and subject to the policy's terms, conditions, definitions and exclusions. The insurance provided in the General Liability policy is primary and any other insurance shall be excess.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Farbman Group 28400 Northwestern Hwy. 4th Floor Southfield        MI  48034 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.  AUTHORIZED REPRESENTATIVE  *[signature]* |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)            The ACORD name and logo are registered marks of ACORD

## Additional Named Insureds

Other Named Insureds

| | |
|---|---|
| Contour Buckingham AL LLC | Additional Named Insured |
| Contour Callington AL, LLC | Additional Named Insured |
| Contour Carlyle AL, LLC | Additional Named Insured |

OFAPPINF (02/2007)                                    **COPYRIGHT 2007, AMS SERVICES INC**

# ACORD® EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

**DATE (MM/DD/YYYY)** 12/09/2025

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

**PRODUCER NAME, CONTACT PERSON AND ADDRESS**
Rhodes Risk Advisors
Greg White
3050 Peachtree Rd NW     Suite 200
Atlanta     GA 30305

**PHONE (A/C, No, Ext):** [redacted]

**FAX (A/C, No):** [redacted]
**E-MAIL ADDRESS:** [redacted]

**COMPANY NAME AND ADDRESS**     **NAIC NO:** 15884
Falls Lake Fire & Casualty Company
5565 Glenridge Connector, Suite 550
Atlanta     GA 30342

IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH

**CODE:**     **SUB CODE:**

**AGENCY CUSTOMER ID #:** 00008527

**POLICY TYPE**
Commercial Property

**NAMED INSURED AND ADDRESS**
Contour Carlyle AL, LLC
40950 Woodward Ave     Suite 300
Bloomfield Hills     MI 48304

**LOAN NUMBER**

**POLICY NUMBER** A615624

**EFFECTIVE DATE** 10/07/2025     **EXPIRATION DATE** 10/07/2026     ☐ CONTINUED UNTIL TERMINATED IF CHECKED

**ADDITIONAL NAMED INSURED(S)**

**THIS REPLACES PRIOR EVIDENCE DATED:**

## PROPERTY INFORMATION     (ACORD 101 may be attached if more space is required)     ☒ BUILDING OR ☒ BUSINESS PERSONAL PROPERTY

**LOCATION / DESCRIPTION**
200 Robert Jemison Road     Park at Carlyle
Birmingham     AL 35209

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION     PERILS INSURED     ☐ BASIC     ☐ BROAD     ☒ SPECIAL

COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE: $ $60,892,368     BPP: $50,000     DED: 25,000

| | YES | NO | N/A | |
|---|---|---|---|---|
| ☒ BUSINESS INCOME  ☒ RENTAL VALUE | X | | | If YES, LIMIT: $8,174,996   ☒ Actual Loss Sustained; # of months: |
| BLANKET COVERAGE | | X | | If YES, indicate value(s) reported on property identified above: $ |
| TERRORISM COVERAGE | | X | | Attach Disclosure Notice / DEC |
| IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | X | | |
| IS DOMESTIC TERRORISM EXCLUDED? | | X | | |
| LIMITED FUNGUS COVERAGE | X | | | If YES, LIMIT: 10,000     DED: 25,000 |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | | X | | |
| REPLACEMENT COST | X | | | |
| AGREED VALUE | X | | | |
| COINSURANCE | | X | | If YES,     % |
| EQUIPMENT BREAKDOWN (If Applicable) | X | | | If YES, LIMIT: 7,500,000     DED: 25,000 |
| ORDINANCE OR LAW  - Coverage for loss to undamaged portion of bldg | X | | | If YES, LIMIT: Included in Building Limit     DED: 25,000 |
| - Demolition Costs | X | | | If YES, LIMIT: 20% per Building, Max. $1M per occ.     DED: 25,000 |
| - Incr. Cost of Construction | X | | | If YES, LIMIT: Included with Coverage B     DED: 25,000 |
| EARTH MOVEMENT (If Applicable) | | X | | If YES, LIMIT:     DED: |
| FLOOD (If Applicable) | | X | | If YES, LIMIT:     DED: |
| WIND / HAIL INCL  ☒ YES ☐ NO  Subject to Different Provisions: | X | | | If YES, LIMIT: Included in Limits     DED: 2%, min $50,000 |
| NAMED STORM INCL  ☒ YES ☐ NO  Subject to Different Provisions: | X | | | If YES, LIMIT: Included in Limits     DED: 2%, min $50,000 |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | | | | |

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

## ADDITIONAL INTEREST

☐ CONTRACT OF SALE     ☐ LENDER'S LOSS PAYABLE     ☐ LOSS PAYEE
☐ MORTGAGEE

**LENDER SERVICING AGENT NAME AND ADDRESS**

**NAME AND ADDRESS**
Farbman Group
28400 Northwestern Hwy.
4th Floor
Southfield     MI 48034

**AUTHORIZED REPRESENTATIVE**
*[signature]*

© 2003-2015 ACORD CORPORATION. All rights reserved.

ACORD 28 (2016/03)     The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** 00008527

**LOC #:**



# ADDITIONAL REMARKS SCHEDULE

**Page** _____ **of** _____

| | |
|---|---|
| **AGENCY**<br>Rhodes Risk Advisors | **NAMED INSURED**<br>Contour Crescent |
| **POLICY NUMBER** | |
| **CARRIER** | **NAIC CODE** |
| | **EFFECTIVE DATE:** |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 28    **FORM TITLE:** Evidence of Commercial Property Insurance: Notes

Re: Contour Callington AL, LLC - Park at Callington - 700 Aspen Drive, Birmingham, AL 35209

Extended Period of Indemnity: 365 Days

30 days notice of cancellation, except for 10 days notice of cancellation for non-payment, applies in favor of the Certificate Holder.

Water Damage Deductible: $25,000 per Building

Terrorism Coverage:
Carrier: Convex Insurance UK Limited
Policy Number: TER000284-1025
Effective: 10/07/2025-10/07/2026
Limit: $65,000,000 Any One Occurrence and in the Aggregate.
Deductible: $5,000 any One Occurrence
TIV: $245,861,582

Additional Named Insureds:
Contour Carlyle AL, LLC
Contour Buckingham AL, LLC

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 01/08/2026 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Greg White |
|---|---|
| Rhodes Risk Advisors | PHONE (A/C, No, Ext): ▮▮▮  FAX (A/C, No): ▮▮▮ |
| 3050 Peachtree Rd NW | E-MAIL ADDRESS: ▮▮▮ |
| Suite 200 | |
| Atlanta                 GA  30305 | **INSURER(S) AFFORDING COVERAGE** — NAIC # |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURER A : | Hamilton Select Insurance, Inc. | 17178 |
| INSURER B : | | |
| INSURER C : | | |
| INSURER D : | | |
| INSURER E : | | |
| INSURER F : | | |

**INSURED**
Contour Buckingham AL, LLC
40950 Woodward Ave
Suite 300
Bloomfield Hills        MI  48304

## COVERAGES     CERTIFICATE NUMBER:  25-26     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** ☐ CLAIMS-MADE ☒ OCCUR ☒ Deductible: $15,000 BI/PD Comb. ☒ Terrorism Excluded  GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PROJECT ☒ LOC ☐ OTHER: | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE  DAMAGE TO RENTED PREMISES (Ea occurrence)  MED EXP (Any one person)  PERSONAL & ADV INJURY  GENERAL AGGREGATE  PRODUCTS - COMP/OP AGG | $ 1,000,000  $ 100,000  $ Excluded  $ 1,000,000  $ 2,000,000  $ 2,000,000  $ |
| A | **AUTOMOBILE LIABILITY** ☐ ANY AUTO ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS ☒ HIRED AUTOS ONLY ☒ NON-OWNED AUTOS ONLY | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | COMBINED SINGLE LIMIT (Ea accident)  BODILY INJURY (Per person)  BODILY INJURY (Per accident)  PROPERTY DAMAGE (Per accident) | $ 1,000,000  $  $  $  $ |
| A | ☒ **UMBRELLA LIAB** ☒ OCCUR  ☒ **EXCESS LIAB** ☐ CLAIMS-MADE  ☐ DED ☒ RETENTION $ 0 | Y | | ECHS00232955 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE  AGGREGATE  Terrorism Excluded | $ 2,000,000  $ 2,000,000  $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y/N ☐ | N/A | | | | ☐ PER STATUTE ☐ OTHER  E.L. EACH ACCIDENT  E.L. DISEASE - EA EMPLOYEE  E.L. DISEASE - POLICY LIMIT | $  $  $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES** (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: Contour Buckingham, AL LLC - Park at Buckingham - 114 Aspen Circle, Homewood AL, 35209
Additional Named Insureds: Contour Callington AL LLC, Contour Carlyle AL LLC

30 days notice of cancellation, except for 10 day notice of cancellation for non-payment, applies in favor of the Certificate Holder. Terrorism included on both GL and Excess policies. Certificate Holder is included as Additional Insured as respects the General Liability policy, pursuant to and subject to the policy's terms, conditions, definitions and exclusions. The insurance provided in the General Liability policy is primary and any other insurance shall be excess.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Farbman Group  28400 Northwestern Hwy.  4th Floor  Southfield          MI  48034 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.  **AUTHORIZED REPRESENTATIVE** *[signature]* |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)              The ACORD name and logo are registered marks of ACORD

## Additional Named Insureds

Other Named Insureds

Contour Buckingham AL LLC                          Additional Named Insured

Contour Callington AL, LLC                         Additional Named Insured

Contour Carlyle AL, LLC                            Additional Named Insured

OFAPPINF (02/2007)                                                    **COPYRIGHT 2007, AMS SERVICES INC**

# ACORD® EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

**DATE (MM/DD/YYYY)** 12/09/2025

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| PRODUCER NAME, CONTACT PERSON AND ADDRESS | PHONE (A/C, No, Ext): | COMPANY NAME AND ADDRESS | NAIC NO: 15884 |
|---|---|---|---|
| Rhodes Risk Advisors<br>Greg White<br>3050 Peachtree Rd NW        Suite 200<br>Atlanta                              GA 30305 | | Falls Lake Fire & Casualty Company<br>5565 Glenridge Connector, Suite 550<br><br>Atlanta                              GA 30342 | |

| FAX (A/C, No): | E-MAIL ADDRESS: | IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH |
|---|---|---|

| CODE: | SUB CODE: | POLICY TYPE |
|---|---|---|
| **AGENCY CUSTOMER ID #:** 00008527 | | Commercial Property |

| NAMED INSURED AND ADDRESS | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| Contour Buckingham AL, LLC<br>40950 Woodward Ave        Suite 300<br>Bloomfield Hills                  MI  48304 | | A615624 |

| | EFFECTIVE DATE | EXPIRATION DATE | CONTINUED UNTIL TERMINATED IF CHECKED |
|---|---|---|---|
| | 10/07/2025 | 10/07/2026 | |

| ADDITIONAL NAMED INSURED(S) | THIS REPLACES PRIOR EVIDENCE DATED: |
|---|---|

## PROPERTY INFORMATION   (ACORD 101 may be attached if more space is required)   ☒ BUILDING   OR   ☒ BUSINESS PERSONAL PROPERTY

| LOCATION / DESCRIPTION |
|---|
| 114 Aspen Circle        Park at Buckingham<br>Homewood                  AL 35209 |

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION    PERILS INSURED    BASIC    BROAD    ☒ SPECIAL

| COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE: | $ $55,832,334    BPP: $50,000 | DED: 25,000 |
|---|---|---|

| | YES | NO | N/A | | |
|---|---|---|---|---|---|
| ☒ BUSINESS INCOME   ☒ RENTAL VALUE | ☒ | | | If YES, LIMIT:  $4,921,867   ☒ Actual Loss Sustained; # of months: | |
| BLANKET COVERAGE | | ☒ | | If YES, indicate value(s) reported on property identified above: $ | |
| TERRORISM COVERAGE | | ☒ | | Attach Disclosure Notice / DEC | |
|    IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | ☒ | | | |
|    IS DOMESTIC TERRORISM EXCLUDED? | | ☒ | | | |
| LIMITED FUNGUS COVERAGE | ☒ | | | If YES, LIMIT:  10,000 | DED:  25,000 |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | | ☒ | | | |
| REPLACEMENT COST | ☒ | | | | |
| AGREED VALUE | ☒ | | | | |
| COINSURANCE | | ☒ | | If YES,         % | |
| EQUIPMENT BREAKDOWN (If Applicable) | ☒ | | | If YES, LIMIT:  7,500,000 | DED:  25,000 |
| ORDINANCE OR LAW  - Coverage for loss to undamaged portion of bldg | ☒ | | | If YES, LIMIT:  Included in Building Limit | DED:  25,000 |
|                        - Demolition Costs | ☒ | | | If YES, LIMIT:  20% per Building, Max. $1M per occ. | DED:  25,000 |
|                        - Incr. Cost of Construction | ☒ | | | If YES, LIMIT:  Included with Coverage B | DED:  25,000 |
| EARTH MOVEMENT (If Applicable) | | ☒ | | If YES, LIMIT: | DED: |
| FLOOD (If Applicable) | | ☒ | | If YES, LIMIT: | DED: |
| WIND / HAIL INCL   ☒ YES  ☐ NO   Subject to Different Provisions: | ☒ | | | If YES, LIMIT:  Included in Limits | DED:  2%, min $50,000 |
| NAMED STORM INCL   ☒ YES  ☐ NO   Subject to Different Provisions: | ☒ | | | If YES, LIMIT:  Included in Limits | DED:  2%, min $50,000 |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | | | | | |

## CANCELLATION

**SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.**

## ADDITIONAL INTEREST

| ☐ CONTRACT OF SALE   ☐ LENDER'S LOSS PAYABLE   ☐ LOSS PAYEE | LENDER SERVICING AGENT NAME AND ADDRESS |
|---|---|
| ☐ MORTGAGEE | |
| **NAME AND ADDRESS**<br>Farbman Group<br>28400 Northwestern Hwy.<br>4th Floor<br>Southfield                  MI  48034 | |

| | AUTHORIZED REPRESENTATIVE |
|---|---|
| | *[signature]* |

© 2003-2015 ACORD CORPORATION.  All rights reserved.

**ACORD 28 (2016/03)**        The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: 00008527

LOC #:



# ADDITIONAL REMARKS SCHEDULE

Page ____ of ____

**AGENCY**
Rhodes Risk Advisors

**NAMED INSURED**
Contour Crescent

**POLICY NUMBER**

**CARRIER** | **NAIC CODE**

**EFFECTIVE DATE:**

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: 28    FORM TITLE: Evidence of Commercial Property Insurance: Notes

Re: Contour Callington AL, LLC - Park at Callington - 700 Aspen Drive, Birmingham, AL 35209

Extended Period of Indemnity: 365 Days

30 days notice of cancellation, except for 10 days notice of cancellation for non-payment, applies in favor of the Certificate Holder.

Water Damage Deductible: $25,000 per Building

Terrorism Coverage:
Carrier: Convex Insurance UK Limited
Policy Number: TER000284-1025
Effective: 10/07/2025-10/07/2026
Limit: $65,000,000 Any One Occurrence and in the Aggregate.
Deductible: $5,000 any One Occurrence
TIV: $245,861,582

Additional Named Insureds:
Contour Carlyle AL, LLC
Contour Buckingham AL, LLC

ACORD 101 (2008/01)    © 2008 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

# CERTIFICATE OF LIABILITY INSURANCE

**ACORD®**

**DATE (MM/DD/YYYY)**
01/08/2026

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Greg White | |
|---|---|---|---|
| Rhodes Risk Advisors | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| 3050 Peachtree Rd NW | E-MAIL ADDRESS: | | |
| Suite 200 | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| Atlanta                          GA  30305 | INSURER A : Hamilton Select Insurance, Inc. | | 17178 |
| **INSURED** | INSURER B : | | |
| Contour Callington AL, LLC | INSURER C : | | |
| 40950 Woodward Ave | INSURER D : | | |
| Suite 300 | INSURER E : | | |
| Bloomfield Hills              MI  48304 | INSURER F : | | |

## COVERAGES        CERTIFICATE NUMBER: 25-26        REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** ☐ CLAIMS-MADE ☒ OCCUR ☒ Deductible: $15,000 BI/PD Comb. ☒ Terrorism Excluded GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PROJECT ☒ LOC ☐ OTHER: | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ Excluded |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** ☐ ANY AUTO ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS ☒ HIRED AUTOS ONLY ☒ NON-OWNED AUTOS ONLY | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | ☒ **UMBRELLA LIAB** ☒ OCCUR ☐ **EXCESS LIAB** ☐ CLAIMS-MADE ☐ DED ☒ RETENTION $ 0 | Y | | ECHS00232955 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE | $ 2,000,000 |
| | | | | | | | AGGREGATE | $ 2,000,000 |
| | | | | | | | Terrorism Excluded | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y/N N/A | | | | | ☐ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Re: Contour Callington, AL LLC - Park at Buckingham - 114 Aspen Circle, Homewood AL, 35209
Additional Named Insureds: Contour Buckingham AL LLC, Contour Carlyle AL LLC

30 days notice of cancellation, except for 10 day notice of cancellation for non-payment, applies in favor of the Certificate Holder. Terrorism included on both GL and Excess policies. Certificate Holder is included as Additional Insured as respects the General Liability policy, pursuant to and subject to the policy's terms, conditions, definitions and exclusions. The insurance provided in the General Liability policy is primary and any other insurance shall be excess.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Farbman Group 28400 Northwestern Hwy. 4th Floor Southfield              MI  48034 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. **AUTHORIZED REPRESENTATIVE** *[signature]* |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)                The ACORD name and logo are registered marks of ACORD

## Additional Named Insureds

Other Named Insureds

Contour Buckingham AL LLC                          Additional Named Insured

Contour Callington AL, LLC                         Additional Named Insured

Contour Carlyle AL, LLC                            Additional Named Insured

 COPYRIGHT 2007, AMS SERVICES INC

# ACORD®  EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

**DATE (MM/DD/YYYY)**
12/09/2025

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| PRODUCER NAME, CONTACT PERSON AND ADDRESS | PHONE (A/C, No, Ext): ▮ | COMPANY NAME AND ADDRESS | NAIC NO: 15884 |
|---|---|---|---|
| Rhodes Risk Advisors<br>Greg White<br>3050 Peachtree Rd NW  Suite 200<br>Atlanta  GA 30305 | | Falls Lake Fire & Casualty Company<br>5565 Glenridge Connector, Suite 550<br><br>Atlanta  GA 30342 | |

| FAX (A/C, No): ▮ | E-MAIL ADDRESS: ▮ | IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH |
|---|---|---|

| CODE: | SUB CODE: | POLICY TYPE |
|---|---|---|
| **AGENCY CUSTOMER ID #:** 00008527 | | Commercial Property |

| NAMED INSURED AND ADDRESS | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| Contour Callington AL, LLC<br>40950 Woodward Ave  Suite 300<br>Bloomfield Hills  MI 48304 | | A615624 |

| | EFFECTIVE DATE | EXPIRATION DATE | CONTINUED UNTIL TERMINATED IF CHECKED |
|---|---|---|---|
| | 10/07/2025 | 10/07/2026 | |

| ADDITIONAL NAMED INSURED(S) | THIS REPLACES PRIOR EVIDENCE DATED: |
|---|---|
| | |

## PROPERTY INFORMATION    (ACORD 101 may be attached if more space is required)    ☒ BUILDING  OR  ☒ BUSINESS PERSONAL PROPERTY

**LOCATION / DESCRIPTION**
700 Aspen Drive  Park at Callington
Birmingham  AL 35209

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.  LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION    PERILS INSURED    BASIC    BROAD    ☒ SPECIAL

| COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE: | $ $50,421,709 | BPP: $50,000 | | DED: 25,000 |
|---|---|---|---|---|

| | YES | NO | N/A | | | |
|---|---|---|---|---|---|---|
| ☒ BUSINESS INCOME  ☒ RENTAL VALUE | ☒ | | | If YES, LIMIT:  $7,125,000 | ☒ Actual Loss Sustained; # of months: | |
| BLANKET COVERAGE | | ☒ | | If YES, indicate value(s) reported on property identified above: $ | | |
| TERRORISM COVERAGE | | ☒ | | Attach Disclosure Notice / DEC | | |
|    IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | ☒ | | | | |
|    IS DOMESTIC TERRORISM EXCLUDED? | | ☒ | | | | |
| LIMITED FUNGUS COVERAGE | ☒ | | | If YES, LIMIT:  10,000 | DED: | 25,000 |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | | ☒ | | | | |
| REPLACEMENT COST | ☒ | | | | | |
| AGREED VALUE | ☒ | | | | | |
| COINSURANCE | | ☒ | | If YES,  % | | |
| EQUIPMENT BREAKDOWN (If Applicable) | ☒ | | | If YES, LIMIT:  7,500,000 | DED: | 25,000 |
| ORDINANCE OR LAW  - Coverage for loss to undamaged portion of bldg | ☒ | | | If YES, LIMIT:  Included in Building Limit | DED: | 25,000 |
|    - Demolition Costs | ☒ | | | If YES, LIMIT:  20% per Building, Max. $1M per occ. | DED: | 25,000 |
|    - Incr. Cost of Construction | ☒ | | | If YES, LIMIT:  Included with Coverage B | DED: | 25,000 |
| EARTH MOVEMENT (If Applicable) | | ☒ | | If YES, LIMIT: | DED: | |
| FLOOD (If Applicable) | | ☒ | | If YES, LIMIT: | DED: | |
| WIND / HAIL INCL  ☒ YES  ☐ NO  Subject to Different Provisions: | ☒ | | | If YES, LIMIT:  Included in Limits | DED: | 2%, min $50,000 |
| NAMED STORM INCL  ☒ YES  ☐ NO  Subject to Different Provisions: | ☒ | | | If YES, LIMIT:  Included in Limits | DED: | 2%, min $50,000 |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | | | | | | |

## CANCELLATION

**SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.**

## ADDITIONAL INTEREST

| ☐ CONTRACT OF SALE | ☐ LENDER'S LOSS PAYABLE | ☐ LOSS PAYEE | LENDER SERVICING AGENT NAME AND ADDRESS |
|---|---|---|---|
| ☐ MORTGAGEE | ☒ Mtg&Lenders Loss Payable | | |

| NAME AND ADDRESS | |
|---|---|
| Wells Fargo Bank, NA ISAOA Records Management<br>MAC: C7300-033<br>1700 Lincoln Street, 3rd Fl<br>Denver  CO 80203 | **AUTHORIZED REPRESENTATIVE**<br>*[signature]* |

© 2003-2015 ACORD CORPORATION.  All rights reserved.

ACORD 28 (2016/03)    The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** 00008527

**LOC #:** _____



# ADDITIONAL REMARKS SCHEDULE

**Page** _____ **of** _____

| **AGENCY** | | **NAMED INSURED** |
|---|---|---|
| Rhodes Risk Advisors | | Contour Crescent |
| **POLICY NUMBER** | | |
| | | |
| **CARRIER** | **NAIC CODE** | |
| | | **EFFECTIVE DATE:** |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 28    **FORM TITLE:** Evidence of Commercial Property Insurance: Notes

Re: Contour Callington AL, LLC - Park at Callington - 700 Aspen Drive, Birrmingham, AL 35209

Extended Period of Indemnity: 365 Days

30 days notice of cancellation, except for 10 days notice of cancellation for non-payment, applies in favor of the Certificate Holder.

Water Damage Deductible: $25,000 per Building

Terrorism Coverage:
Carrier: Convex Insurance UK Limited
Policy Number: TER000284-1025
Effective: 10/07/2025-10/07/2026
Limit: $65,000,000 Any One Occurrence and in the Aggregate.
Deductible: $5,000 any One Occurrence
TIV: $245,861,582

Additional Named Insureds:
Contour Carlyle AL, LLC
Contour Buckingham AL, LLC

ACORD 101 (2008/01)    © 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD

# ACORD®  EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

**DATE (MM/DD/YYYY)**
12/09/2025

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

**PRODUCER NAME, CONTACT PERSON AND ADDRESS**
**PHONE (A/C, No, Ext):** [redacted]
Rhodes Risk Advisors
Greg White
3050 Peachtree Rd NW          Suite 200
Atlanta                                      GA  30305
**FAX (A/C, No):** [redacted]
**E-MAIL ADDRESS:** [redacted]

**COMPANY NAME AND ADDRESS**
**NAIC NO:** 15884
Falls Lake Fire & Casualty Company
5565 Glenridge Connector, Suite 550
Atlanta                                      GA  30342
IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH

**CODE:**
**SUB CODE:**
**AGENCY CUSTOMER ID #:** 00008527

**POLICY TYPE**
Commercial Property

**NAMED INSURED AND ADDRESS**
Contour Carlyle AL, LLC
40950 Woodward Ave          Suite 300
Bloomfield Hills                          MI  48304
**ADDITIONAL NAMED INSURED(S)**

**LOAN NUMBER**

**POLICY NUMBER**
A615624

**EFFECTIVE DATE**
10/07/2025
**EXPIRATION DATE**
10/07/2026
☐ CONTINUED UNTIL TERMINATED IF CHECKED

**THIS REPLACES PRIOR EVIDENCE DATED:**

## PROPERTY INFORMATION    (ACORD 101 may be attached if more space is required)    ☒ BUILDING  OR  ☒ BUSINESS PERSONAL PROPERTY

**LOCATION / DESCRIPTION**
200 Robert Jemison Road          Park at Carlyle
Birmingham                                      AL  35209

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.  LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION          PERILS INSURED    ☐ BASIC    ☐ BROAD    ☒ SPECIAL

COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE:  $ $60,892,368    BPP: $50,000    DED: 25,000

| | YES | NO | N/A | |
|---|---|---|---|---|
| ☒ BUSINESS INCOME   ☒ RENTAL VALUE | ☒ | | | If YES, LIMIT:  $8,174,996   ☒ Actual Loss Sustained; # of months: |
| BLANKET COVERAGE | | ☒ | | If YES, indicate value(s) reported on property identified above: $ |
| TERRORISM COVERAGE | | ☒ | | Attach Disclosure Notice / DEC |
| IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | ☒ | | |
| IS DOMESTIC TERRORISM EXCLUDED? | | ☒ | | |
| LIMITED FUNGUS COVERAGE | ☒ | | | If YES, LIMIT:  10,000    DED:  25,000 |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | | ☒ | | |
| REPLACEMENT COST | ☒ | | | |
| AGREED VALUE | ☒ | | | |
| COINSURANCE | | ☒ | | If YES,          % |
| EQUIPMENT BREAKDOWN (If Applicable) | ☒ | | | If YES, LIMIT:  7,500,000    DED:  25,000 |
| ORDINANCE OR LAW   - Coverage for loss to undamaged portion of bldg | ☒ | | | If YES, LIMIT:  Included in Building Limit    DED:  25,000 |
| - Demolition Costs | ☒ | | | If YES, LIMIT:  20% per Building, Max. $1M per occ.    DED:  25,000 |
| - Incr. Cost of Construction | ☒ | | | If YES, LIMIT:  Included with Coverage B    DED:  25,000 |
| EARTH MOVEMENT (If Applicable) | | ☒ | | If YES, LIMIT:    DED: |
| FLOOD (If Applicable) | | ☒ | | If YES, LIMIT:    DED: |
| WIND / HAIL INCL   ☒ YES  ☐ NO   Subject to Different Provisions: | ☒ | | | If YES, LIMIT:  Included in Limits    DED:  2%, min $50,000 |
| NAMED STORM INCL   ☒ YES  ☐ NO   Subject to Different Provisions: | ☒ | | | If YES, LIMIT:  Included in Limits    DED:  2%, min $50,000 |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | | | | |

## CANCELLATION

**SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.**

## ADDITIONAL INTEREST

☐ CONTRACT OF SALE    ☐ LENDER'S LOSS PAYABLE    ☐ LOSS PAYEE
☐ MORTGAGEE    ☒ Mtg&Lenders Loss Payable

**LENDER SERVICING AGENT NAME AND ADDRESS**

**NAME AND ADDRESS**
Wells Fargo Bank, NA ISAOA Records Management
MAC: C7300-033
1700 Lincoln Street, 3rd Fl
Denver                          CO  80203

**AUTHORIZED REPRESENTATIVE**
*[signature]*

© 2003-2015 ACORD CORPORATION.  All rights reserved.

ACORD 28 (2016/03)          The ACORD name and logo are registered marks of ACORD

AGENCY CUSTOMER ID: 00008527

LOC #:



# ADDITIONAL REMARKS SCHEDULE

Page ____ of ____

| **AGENCY** | | **NAMED INSURED** |
|---|---|---|
| Rhodes Risk Advisors | | Contour Crescent |

| **POLICY NUMBER** | | |
|---|---|---|
| | | |

| **CARRIER** | **NAIC CODE** | |
|---|---|---|
| | | **EFFECTIVE DATE:** |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 28      **FORM TITLE:** Evidence of Commercial Property Insurance: Notes

Re: Contour Carlyle AL, LLC - Park at Carlyle - 200 Robert Jemison Road, Birmingham, AL 35209

Extended Period of Indemnity: 365 Days

30 days notice of cancellation, except for 10 days notice of cancellation for non-payment, applies in favor of the Certificate Holder.

Water Damage Deductible: $25,000 per Building

Terrorism Coverage:
Carrier: Convex Insurance UK Limited
Policy Number: TER000284-1024
Effective: 10/07/2025-10/07/2026
Limit: $65,000,000 Any One Occurrence and in the Aggregate.
Deductible: $5,000 any One Occurrence
TIV: $245,861,582

Additional Named Insureds:
Contour Buckingham AL, LLC
Contour Callington AL, LLC

**ACORD 101 (2008/01)**

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD

# ACORD®  EVIDENCE OF COMMERCIAL PROPERTY INSURANCE

**DATE (MM/DD/YYYY)** 12/09/2025

THIS EVIDENCE OF COMMERCIAL PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS EVIDENCE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE ADDITIONAL INTEREST.

| PRODUCER NAME, CONTACT PERSON AND ADDRESS | PHONE (A/C, No, Ext): | COMPANY NAME AND ADDRESS | NAIC NO: 15884 |
|---|---|---|---|
| Rhodes Risk Advisors | | Falls Lake Fire & Casualty Company | |
| Greg White | | 5565 Glenridge Connector, Suite 550 | |
| 3050 Peachtree Rd NW       Suite 200 | | | |
| Atlanta                            GA  30305 | | Atlanta                             GA  30342 | |

| FAX (A/C, No): | E-MAIL ADDRESS: | IF MULTIPLE COMPANIES, COMPLETE SEPARATE FORM FOR EACH |
|---|---|---|

| CODE: | SUB CODE: | POLICY TYPE |
|---|---|---|
| AGENCY CUSTOMER ID #:  00008527 | | Commercial Property |

| NAMED INSURED AND ADDRESS | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| Contour Buckingham AL, LLC | | A615624 |
| 40950 Woodward Ave       Suite 300 | **EFFECTIVE DATE** | **EXPIRATION DATE** | |
| Bloomfield Hills                MI  48304 | 10/07/2025 | 10/07/2026 | CONTINUED UNTIL TERMINATED IF CHECKED |

| ADDITIONAL NAMED INSURED(S) | THIS REPLACES PRIOR EVIDENCE DATED: |
|---|---|

## PROPERTY INFORMATION     (ACORD 101 may be attached if more space is required)     ☒ BUILDING  OR  ☒ BUSINESS PERSONAL PROPERTY

**LOCATION / DESCRIPTION**
114 Aspen Circle          Park at Buckingham
Homewood                      AL  35209

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

### COVERAGE INFORMATION          PERILS INSURED     ☐ BASIC     ☐ BROAD     ☒ SPECIAL

COMMERCIAL PROPERTY COVERAGE AMOUNT OF INSURANCE:  $ $55,832,334     BPP: $50,000          DED: 25,000

| | YES | NO | N/A | | |
|---|:---:|:---:|:---:|---|---|
| ☒ BUSINESS INCOME   ☒ RENTAL VALUE | ☒ | | | If YES, LIMIT:  $4,921,867 | ☒ Actual Loss Sustained; # of months: |
| BLANKET COVERAGE | | ☒ | | If YES, indicate value(s) reported on property identified above: $ | |
| TERRORISM COVERAGE | | ☒ | | Attach Disclosure Notice / DEC | |
|    IS THERE A TERRORISM-SPECIFIC EXCLUSION? | | ☒ | | | |
|    IS DOMESTIC TERRORISM EXCLUDED? | | ☒ | | | |
| LIMITED FUNGUS COVERAGE | ☒ | | | If YES, LIMIT:  10,000 | DED:  25,000 |
| FUNGUS EXCLUSION (If "YES", specify organization's form used) | | ☒ | | | |
| REPLACEMENT COST | ☒ | | | | |
| AGREED VALUE | ☒ | | | | |
| COINSURANCE | | ☒ | | If YES,          % | |
| EQUIPMENT BREAKDOWN (If Applicable) | ☒ | | | If YES, LIMIT:  7,500,000 | DED:  25,000 |
| ORDINANCE OR LAW   - Coverage for loss to undamaged portion of bldg | ☒ | | | If YES, LIMIT:  Included in Building Limit | DED:  25,000 |
|                          - Demolition Costs | ☒ | | | If YES, LIMIT:  20% per Building, Max. $1M per occ. | DED:  25,000 |
|                          - Incr. Cost of Construction | ☒ | | | If YES, LIMIT:  Included with Coverage B | DED:  25,000 |
| EARTH MOVEMENT (If Applicable) | | | ☒ | If YES, LIMIT: | DED: |
| FLOOD (If Applicable) | | | ☒ | If YES, LIMIT: | DED: |
| WIND / HAIL INCL   ☒ YES ☐ NO   Subject to Different Provisions: | ☒ | | | If YES, LIMIT:  Included in Limits | DED:  2%, min $50,000 |
| NAMED STORM INCL   ☒ YES ☐ NO   Subject to Different Provisions: | ☒ | | | If YES, LIMIT:  Included in Limits | DED:  2%, min $50,000 |
| PERMISSION TO WAIVE SUBROGATION IN FAVOR OF MORTGAGE HOLDER PRIOR TO LOSS | | | | | |

## CANCELLATION

**SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.**

## ADDITIONAL INTEREST

| ☐ CONTRACT OF SALE | ☐ LENDER'S LOSS PAYABLE | ☐ LOSS PAYEE | LENDER SERVICING AGENT NAME AND ADDRESS |
|---|---|---|---|
| ☐ MORTGAGEE | ☒ Mtg&Lenders Loss Payable | | |

**NAME AND ADDRESS**
Wells Fargo Bank, NA ISAOA Records Management
MAC: C7300-033
1700 Lincoln Street, 3rd Fl
Denver                                CO  80203

**AUTHORIZED REPRESENTATIVE**
*[signature]*

© 2003-2015 ACORD CORPORATION.  All rights reserved.

ACORD 28 (2016/03)          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** 00008527

**LOC #:**



# ADDITIONAL REMARKS SCHEDULE

**Page** ___ **of** ___

| **AGENCY** | | **NAMED INSURED** |
| --- | --- | --- |
| Rhodes Risk Advisors | | Contour Crescent |
| **POLICY NUMBER** | | |
| **CARRIER** | **NAIC CODE** | |
| | | **EFFECTIVE DATE:** |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 28    **FORM TITLE:** Evidence of Commercial Property Insurance: Notes

Re: Contour Buckingham AL, LLC - Park at Buckingham - 114 Aspen Circle, Homewood, AL 35209

Extended Period of Indemnity: 365 Days

30 days notice of cancellation, except for 10 days notice of cancellation for non-payment, applies in favor of the Certificate Holder.

Water Damage Deductible: $25,000 per Building

Terrorism Coverage:
Carrier: Convex Insurance UK Limited
Policy Number: TER000284-1025
Effective: 10/07/2025-10/07/2026
Limit: $65,000,000 Any One Occurrence and in the Aggregate.
Deductible: $5,000 any One Occurrence
TIV: $245,861,582

Additional Named Insureds:
Contour Carlyle AL, LLC
Contour Callington AL, LLC

**ACORD 101 (2008/01)**

© 2008 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

# ACORD®   CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)** 12/17/2025

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Greg White |
|---|---|
| Rhodes Risk Advisors | PHONE (A/C, No, Ext): ▮▮▮   FAX (A/C, No): ▮▮▮ |
| 3050 Peachtree Rd NW | E-MAIL ADDRESS: ▮▮▮ |
| Suite 200 | **INSURER(S) AFFORDING COVERAGE** — NAIC # |
| Atlanta                    GA  30305 | INSURER A : Hamilton Select Insurance, Inc.   17178 |

| INSURED | |
|---|---|
| Contour Buckingham AL, LLC | INSURER B : |
| 40950 Woodward Ave | INSURER C : |
| Suite 300 | INSURER D : |
| Bloomfield Hills        MI  48304 | INSURER E : |
| | INSURER F : |

## COVERAGES     CERTIFICATE NUMBER: 25-26     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** — ☐ CLAIMS-MADE ☒ OCCUR; ☒ Deductible: $15,000 BI/PD Comb.; ☒ Terrorism Excluded; GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PROJECT ☒ LOC ☐ OTHER: | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ Excluded |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** — ☐ ANY AUTO ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS ☒ HIRED AUTOS ONLY ☒ NON-OWNED AUTOS ONLY | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | ☒ **UMBRELLA LIAB** ☒ OCCUR / ☒ **EXCESS LIAB** ☐ CLAIMS-MADE; ☐ DED ☒ RETENTION $ 0 | Y | | ECHS00232955 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE | $ 2,000,000 |
| | | | | | | | AGGREGATE | $ 2,000,000 |
| | | | | | | | Terrorism Excluded | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** — ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ Y/N (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | | | | ☐ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Re: Contour Buckingham, AL LLC - Park at Buckingham - 114 Aspen Circle, Homewood AL, 35209
Additional Named Insureds: Contour Callington AL LLC, Contour Carlyle AL LLC

30 days notice of cancellation, except for 10 day notice of cancellation for non-payment, applies in favor of the Certificate Holder. Terrorism included on both GL and Excess policies. Certificate Holder is included as Additional Insured as respects the General Liability policy, pursuant to and subject to the policy's terms, conditions, definitions and exclusions. The insurance provided in the General Liability policy is primary and any other insurance shall be excess.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Citi Real Estate Funding Inc. ISAOA, ATIMA | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| c/o Midland Loan Services | |
| PO Box 25965 | **AUTHORIZED REPRESENTATIVE** |
| Shawnee Mission        KS  66225-5965 | *(signature)* |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

## Additional Named Insureds

Other Named Insureds

Contour Buckingham AL LLC                          Additional Named Insured

Contour Callington AL, LLC                         Additional Named Insured

Contour Carlyle AL, LLC                            Additional Named Insured

OFAPPINF (02/2007)                                 **COPYRIGHT 2007, AMS SERVICES INC**

# ACORD®  CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
12/17/2025

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Greg White |
|---|---|
| Rhodes Risk Advisors<br>3050 Peachtree Rd NW<br>Suite 200<br>Atlanta                    GA  30305 | PHONE (A/C, No, Ext): ▮▮▮   FAX (A/C, No): ▮▮▮<br>E-MAIL ADDRESS: ▮▮▮ |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURER A : | Hamilton Select Insurance, Inc. | 17178 |
| INSURER B : | | |
| INSURER C : | | |
| INSURER D : | | |
| INSURER E : | | |
| INSURER F : | | |

**INSURED**
Contour Carlyle AL, LLC
40950 Woodward Ave
Suite 300
Bloomfield Hills          MI  48304

## COVERAGES          CERTIFICATE NUMBER:  25-26          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** ☐ CLAIMS-MADE ☒ OCCUR ☒ Deductible: $15,000 BI/PD Comb. ☒ Terrorism Excluded | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ Excluded |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PROJECT ☒ LOC ☐ OTHER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** ☐ ANY AUTO ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS ☒ HIRED AUTOS ONLY ☒ NON-OWNED AUTOS ONLY | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | ☒ **UMBRELLA LIAB** ☒ OCCUR ☐ **EXCESS LIAB** ☐ CLAIMS-MADE ☐ DED ☒ RETENTION $ 0 | Y | | ECHS00232955 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE | $ 2,000,000 |
| | | | | | | | AGGREGATE | $ 2,000,000 |
| | | | | | | | Terrorism Excluded | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y / N | N / A | | | | ☐ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Re: Contour Carlyle AL, LLC - Park at Carlyle - 700 Aspen Drive, Birmingham, AL 35209
Additional Named Insureds: Contour Buckingham AL LLC, Contour Callington AL LLC

30 days notice of cancellation, except for 10 day notice of cancellation for non-payment, applies in favor of the Certificate Holder. Terrorism included on both GL and Excess policies. Certificate Holder is included as Additional Insured as respects the General Liability policy, pursuant to and subject to the policy's terms, conditions, definitions and exclusions. The insurance provided in the General Liability policy is primary and any other insurance shall be excess.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Citi Real Estate Funding Inc. ISAOA, ATIMA<br>c/o Midland Loan Services<br>PO Box 25965<br>Shawnee Mission          KS  66255-5964 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>**AUTHORIZED REPRESENTATIVE** *[signature]* |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

## Additional Named Insureds

Other Named Insureds

Contour Buckingham AL LLC                                    Additional Named Insured

Contour Callington AL, LLC                                   Additional Named Insured

Contour Carlyle AL, LLC                                      Additional Named Insured

OFAPPINF (02/2007)                                           **COPYRIGHT 2007, AMS SERVICES INC**

**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 12/17/2025 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Greg White | | |
|---|---|---|---|
| Rhodes Risk Advisors | PHONE (A/C, No, Ext): ▮ | | FAX (A/C, No): ▮ |
| 3050 Peachtree Rd NW | E-MAIL ADDRESS: ▮ | | |
| Suite 200 | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| Atlanta                          GA  30305 | INSURER A : Hamilton Select Insurance, Inc. | | 17178 |
| **INSURED** | INSURER B : | | |
| Contour Callington AL, LLC | INSURER C : | | |
| 40950 Woodward Ave | INSURER D : | | |
| Suite 300 | INSURER E : | | |
| Bloomfield Hills                 MI  48304 | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER: 25-26          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** <br> ☐ CLAIMS-MADE ☒ OCCUR <br> ☒ Deductible: $15,000 BI/PD Comb. <br> ☒ Terrorism Excluded <br> GEN'L AGGREGATE LIMIT APPLIES PER: <br> ☐ POLICY ☐ PRO-JECT ☒ LOC <br> ☐ OTHER: | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ Excluded |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** <br> ☐ ANY AUTO <br> ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS <br> ☒ HIRED AUTOS ONLY ☒ NON-OWNED AUTOS ONLY | Y | | GCS00232881 | 12/12/2025 | 12/12/2026 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | ☒ **UMBRELLA LIAB** ☒ OCCUR <br> ☒ **EXCESS LIAB** ☐ CLAIMS-MADE <br> ☐ DED ☒ RETENTION $ 0 | Y | | ECHS00232955 | 12/12/2025 | 12/12/2026 | EACH OCCURRENCE | $ 2,000,000 |
| | | | | | | | AGGREGATE | $ 2,000,000 |
| | | | | | | | Terrorism Excluded | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** <br> ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ Y/N <br> (Mandatory in NH) <br> If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Re: Contour Callington AL, LLC - Park at Callington - 200 Robert Jemison Rd, Birmingham, AL 35209
Additional Named Insureds: Contour Buckingham AL LLC, Contour Carlyle AL LLC

30 days notice of cancellation, except for 10 day notice of cancellation for non-payment, applies in favor of the Certificate Holder. Terrorism included on both GL and Excess policies. Certificate Holder is included as Additional Insured as respects the General Liability policy, pursuant to and subject to the policy's terms, conditions, definitions and exclusions. The insurance provided in the General Liability policy is primary and any other insurance shall be excess.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Citi Real Estate Funding Inc. ISAOA, ATIMA <br> c/o Midland Loan Services <br> PO Box 25965 <br> Shawnee Mission                    KS  66225-5964 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. <br><br> **AUTHORIZED REPRESENTATIVE** <br> *[signature]* |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

## Additional Named Insureds

Other Named Insureds

Contour Buckingham AL LLC                          Additional Named Insured

Contour Callington AL, LLC                         Additional Named Insured

Contour Carlyle AL, LLC                            Additional Named Insured

OFAPPINF (02/2007)                                 **COPYRIGHT 2007, AMS SERVICES INC**