FILED
2026 Aug-14 PM 05:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WELLS FARGO BANK, N.A.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| **CONTOUR BUCKINGHAM AL LLC, CONTOUR CALLINGTON AL, LLC and CONTOUR CARLYLE AL LLC,** | ) | **CIVIL ACTION NO: 2:25-cv-02136-GMB** |
| **Defendant.** | ) | |

**RECEIVER'S EXPEDITED MOTION TO ENFORCE STAY OF CIVIL PROCEEDINGS**

Farbman Group, in its capacity as the court-appointed receiver (the "***Receiver***") over the Receivership Estate[1] established by this Court's December 23, 2025, *Order Appointing Receiver* (the "***Receivership Order***") (Dkt. No. 18), respectfully moves the Court to enforce the stay of proceedings and channeling injunction set forth in the Receivership Order and stay Joshua Young ("***Mr. Young***") from pursuing the claims asserted in the lawsuit styled *Joshua Young v. Contour Buckingham AL, LLC, et. al*, Case No. 01-CV-2026-903395, pending in the Circuit Court of Jefferson County, Alabama (the

[1] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Receivership Order.

"***Young Action***") until further order of this Court or the Receiver's discharge. In support, the Receiver states as follows:

## I. SUMMARY OF REQUESTED RELIEF

1. The Receivership Order grants the Receiver exclusive possession, custody, and control of the Receivership Estate, including three multi-family apartment complexes (collectively, the "***Facilities***") commonly known as The Park at Buckingham ("***Buckingham***"), The Park at Callington ("***Callington***"), and The Park at Carlyle ("***Carlye***"). (Receivership Order ¶¶ E–G). The Receivership Order further charges the Receiver with operating and preserving the Receivership Estate, including the Facilities, for the benefit of the Receivership Estate's creditors. (Receivership Order ¶¶ F).

2. The Young Action is related to Buckingham. Mr. Young is a tenant in Building 11 at Buckingham. The Buckingham apartment complex is divided into buildings (each a, "***Building***," and collectively, the "***Buildings***"), 542 units (each a, "***Unit***," and collectively, the "***Units***"), of which, as of August 9, 2026, 319 Units were occupied and 223 were unoccupied. The City of Homewood, Alabama (the "***City***") has asserted that multiple Buildings consisting of 469 Units at Buckingham are unsafe for occupancy and ordered that they be vacated.

3. Mr. Young, a tenant at Buckingham, Building 11, has asserted claims against, among others, the Receiver and two of its on-site employees in their individual capacities, based on the alleged condition of his Unit, failure to make necessary repairs, keep the Unit in habitable condition, and take corrective action in response to the City's notices. Prosecution of the claims at this time is inconsistent with the terms and purpose of the stay provided for in the Receivership Order, will deplete the limited resources the Receiver needs to operate the Receivership Estate, and negatively impacts the Receivership Estate's financial condition.

4. The purpose of the Receivership Order's stay of proceedings and channeling injunction is to preserve revenues for the administration and operations of the Facilities. Given the financial condition of the Facilities, it is the Receiver's business judgment that enforcing the stay of proceedings and channeling injunction is necessary to preserve those revenues for the preservation and operation of the Facilities.

5. The Receiver requests Mr. Young be stayed from pursuing his claims in the Young Action during the pendency of the receivership.

## II. <u>GROUNDS FOR EXPEDITED RELIEF</u>

6. Expedited relief is necessary to avoid the necessity of appearing in the Circuit Court of Jefferson County, Alabama, before the Court has had

a chance to address the Receiver's requested relief and to avoid the incurrence of unnecessary costs of litigation.

## III. FACTUAL BACKGROUND

7. On December 15, 2025, plaintiff, Wells Fargo Bank, N.A., the holder in the aggregate outstanding amount of approximately $150,000,000 in loans secured by a first-priority lien on the Facilities and the revenues of the Facilities, commenced this action seeking, among other things, the appointment of a receiver.

8. On December 23, 2025, the Court appointed the Receiver and vested it with "full power and authority to control, manage, administer, operate, and protect the Receivership Estate," including the exclusive right to operate the Facilities. (Receivership Order ¶¶ E, G, R).

9. Upon its appointment, the Receiver investigated both the financial and physical condition of the Facilities. The Receiver's initial assessment, together with a limited engineering study, uncovered existing extensive deferred maintenance and hazardous conditions, including structural deterioration, mold and water intrusion, fire-safety deficiencies, and unsecured vacant units at Buckingham.

10. Further investigation revealed that, in calendar year 2025, five buildings at Buckingham (Buildings 10, 12, 14, 16, and 18) had been slated

for demolition by the City. Buckingham's prior owners had already authorized the demolition of Buildings 10, 12, 14, 16, and 18, and the City carried out the demolition in February 2026. In April 2026, the Receiver paid the City's demolition invoice for Buildings 10, 12, 14, 16, and 18 of $98,500.

11. Thereafter, the Receiver engaged an engineer, who provided an estimate on June 1, 2026, for the repair of Buildings 1, 3, 5, 7, and 9 at Buckingham. The estimate allocated $75,000 to foundation repairs, demolition, and mold remediation, and $175,000 to re-framing and the installation of new plumbing, mechanical, electrical, and interior finishes. The Receivership Estate did not have funds available to perform the work at that time and, in the Receiver's business judgment, it is not economically prudent at this time to invest the funds necessary to perform similar work at all impacted Buildings.

12. On June 3, 2026, the City's Housing Code Abatement Board provided notice of its assertion that Buckingham Buildings 1, 3, 5, 7, and 9 were unsafe and ordered the alleged unsafe conditions remedied or Buildings 1, 3, 5, 7 and 9 demolished by August 3, 2026.

13. Following the City's Housing Code Abatement Board notice, the City continued to inspect other Buildings at Buckingham.

14. On July 29, 2026, the City's Department of Building, Engineering & Zoning Code Enforcement Division posted an Order to Vacate on Buckingham Buildings 11, 15, 20, 22, 24, 26, 28, 30, 32, 34, 36, 37, 38, 39, 40, 42, 44, 46, 48, 50, 53, 55, 57, 59, 88, 101, 103, 105, 107, 110, 112, 116, 118, 120, 122, 126, 135, 151, 153, 155, 157, 159, 160, and 162 informing residents that occupancy of the Building was prohibited and that the Buildings were unsafe for occupancy.

15. On July 30, 2026, the City's Department of Building, Engineering & Zoning Code Enforcement Division served the Receiver with a Notice of Condemnation for Buckingham Buildings 11, 15, 20, 22, 24, 26, 28, 30, 32, 34, 36, 37, 38, 39, 40, 42, 44, 46, 48, 50, 53, 55, 57, 59, 88, 101, 103, 105, 107, 110, 112, 116, 118, 120, 122, 126, 135, 151, 153, 155, 157, 159, 160, and 162 due to asserted 2021 International Property Maintenance Code violations, ordered all persons in the affected Buildings to immediately vacate, and for the owner to submit an abatement plan by September 1, 2026, or demolish the affected Buildings. The City's Notice of Condemnation further provided that if the owner did not submit timely and implement an acceptable building specific abatement plan, failed to maintain required security, or failed to demonstrate continuous progress, the Department of Building, Engineering & Zoning Code Enforcement Division would proceed

through the City's condemnation and abatement procedures, including demolition. Following the City's inspection, only 37 then occupied Buckingham Units were declared safe for occupancy by the City.

16. The Receiver and City have been and continue to be in communication regarding the real human impact at Buckingham, and the City, to its credit, has taken and continues to undertake efforts to assist Buckingham residents.

17. Since its appointment, the Receiver has actively worked to stabilize the Facilities and engage with the City. However, the Receivership Estate does not have the funds necessary to make the repairs necessary to abate the alleged code violations identified by the City. Further, it is the Receiver's business judgment that it is not economically prudent to invest the funds necessary to make the repairs needed to abate the alleged code violations identified by the City.

18. As of the date of this motion, the Facilities are operating with a negative cash flow, and the Receivership Estate has no funds with which to respond to the City's demands; moreover, because of the City's actions, whether justified or not, Buckingham is no longer a revenue producing property.

19. Moreover, in the Receiver's business judgment, the assets of the Receivership Estate, including the Facilities, are worth less than the $150,000,000 secured indebtedness and priority claims encumbering them.

20. Without seeking leave of this Court, On July 31, 2026, one day after the City served its Notice of Condemnation and Correction Order, Mr. Young initiated the Young Action by filing his *Complaint and Jury Demand* (the "***Young Complaint***"). Mr. Young asserts sixteen causes of action, including breach of the Alabama statutory and implied warranties of habitability, violation of the Alabama Uniform Residential Landlord and Tenant Act, negligence, wantonness, nuisance, and constructive eviction, all arising from the condition of Buckingham and the City's Order to Vacate. The Receiver is named for "its own acts and omissions while operating and managing the property as court-appointed receiver," and two of the Receiver's employees are named individually for their roles as property-management personnel. Mr. Young seeks compensatory and punitive damages and has demanded a trial by jury.

21. Mr. Young entered into his lease in Building 11 on May 20, 2025. His lease term expired on May 31, 2026. Beginning on June 1, 2026, Mr. Young's lease automatically converted to a month-to-month tenancy. The Receiver has documentation of Mr. Young making one repair request on

March 5, 2026, related to his air conditioning unit, and that unit being repaired on April 22, 2026. The Receiver's records further reflect that Mr. Young owes unpaid rent in the approximate amount of $1,500.

22. On July 30, 2026, the Receiver provided Buckingham tenants with notice that they "should make plans assuming the order to vacate stays in place," that the Receiver would voluntarily terminate their lease, and that if they voluntarily moved out there would be no termination fee and no charge for August 2026 rent. As of the date hereof, more than 52 tenants have informed the Receiver that they intend to vacate.

23. Pursuant to the Receivership Order all civil legal proceedings of any nature relating to the Receivership Estate, are stayed until further order of the Receivership Court, and that any actions or proceedings which involve the Receiver or the administration, operation or control of the Receivership Estate by the Receiver shall be filed in the Receivership Court. The Receivership Order further provides that any party with notice of the Receivership Order shall be required to comply with all terms thereof unless and until relieved from such obligations by subsequent order of the Receivership Court. (Receivership Order ¶¶ P, Q, BB).

24. On August 10, 2026, the Receiver wrote to advise Mr. Young's counsel of the stay of all claims against the Receiver and the Receivership

Estate, and requested that, on or before August 13, 2026, Mr. Young dismiss without prejudice the Young Action only to be refiled if Mr. Young obtained leave of the stay of civil proceedings and channeling injunction from this Court.

25. On August 12, 2026, Mr. Young filed a motion to stay proceedings in the Young Action citing the Receivership Order's stay of civil proceedings. As of the date hereof, Mr. Young's motion is still pending and has not yet been set for hearing.

## IV. <u>REQUEST FOR RELIEF</u>

26. The Receiver requests that the Court enter an order (i) providing that this Court has jurisdiction and authority to enjoin Mr. Young from continuing to pursue his claims during the pendency of the receivership; (ii) confirming that the stay and channeling injunction in Paragraphs P, Q, and BB of the Receivership Order apply to and enjoin the Young Action; and (iii) staying the Young Action until the Receiver's discharge or further order of this Court.

## V. <u>BASIS FOR RELIEF</u>

### A. <u>The Receivership Order and Alabama law provide for a stay of claims.</u>

27. The Receivership Order independently supports the relief sought in this motion. Specifically, paragraph Q stays "[a]ll civil legal proceedings

of any nature related to any Receivership Property … in their entirety until further Order of this court," while Paragraph P requires every person with notice of the Order to comply with its terms until this Court relieves them of that obligation. Reinforcing both, Paragraph BB channels "any actions or proceedings which involve the Receiver, any Receiver Affiliate, or the Receivership Estate or the administration, operation or control of the Receivership Estate by the Receiver" to this Court and bars enforcement of any judgment other than Wells Fargo's against the Receivership Estate absent further order. As a suit against the Receiver that concerns the Receiver's administration of the Receivership Estate and seeks damages payable from the Receivership Estate, the Young Action falls squarely within each of these provisions.

28. State law provides an additional basis to stay the Young Lawsuit. Alabama's Uniform Commercial Real Estate Receivership Act authorizes a receivership court to enter an order enjoining an act, action, or proceeding against or relating to receivership property where necessary to protect the property. *See* Ala. Code § 6-6-793. The applicable provisions of the Receivership Order and the relief requested here is fully consistent with that statutory authority.

B. This Court has the authority to stay litigation in other forums that would interfere with the receivership.

29. A federal court that has taken property into a receivership possesses broad, inherent equitable authority to stay or enjoin litigation elsewhere that threatens its administration of the receivership estate. That authority is not incidental to the receivership; it is essential to it, because a receivership cannot function if creditors and claimants remain free to pursue the estate's assets in scattered forums. A receivership court accordingly "has power to issue orders barring actions which would interfere with its administration of [the receivership] estate." *SEC v. Wencke* (*Wencke I*), 622 F.2d 1363, 1370 (9th Cir. 1980); *accord Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985). That power "rests as much on [the Court's] control over the property placed in receivership as on its jurisdiction over the parties." *Wencke I*, 622 F.2d at 1369.

30. Consistent therewith, courts have confirmed that a receivership court may bar or stay third-party proceedings that would reach receivership assets, precisely because such proceedings would undermine the court's stewardship of the estate it is charged with preserving. As the Fifth Circuit has explained, "the exercise of jurisdiction over a receivership . . . permits the barring of . . . proceedings where they would undermine the receivership's

operation." *Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883, 902 (5th Cir. 2019). And that authority reaches comprehensive relief, for "a district court has broad authority to issue blanket stays of litigation to preserve the property placed in receivership." *SEC v. Stanford Int'l Bank Ltd.*, 424 F. App'x 338, 340 (5th Cir. 2011) (*per curiam*).

31. These equitable principles rest on an even older foundation: property in the hands of a receiver is *in custodia legis*, meaning it is held in the custody of the appointing court, and no other court may interfere with that property or entertain a suit against the receiver for acts taken in his official capacity without first obtaining leave of the appointing court. *Barton v. Barbour*, 104 U.S. 126 (1881); *Carter v. Rodgers*, 220 F.3d 1249 (11th Cir. 2000). That requirement is jurisdictional, not discretionary. A party "must obtain leave of the [appointing] court before initiating an action . . . against the trustee or other . . . court-appointed officer, for acts done in the actor's official capacity," and absent that leave the other court lacks subject-matter jurisdiction altogether. *Carter*, 220 F.3d at 1252. Mr. Young neither sought nor obtained that leave, and his action cannot proceed without it.

32. Anticipating this jurisdictional bar, Mr. Young is likely to invoke 28 U.S.C. § 959(a), but that section does not save his action. Section 959(a) permits trustees and receivers to "be sued, without leave of the court

appointing them, with respect to any of their acts or transactions in carrying on business connected with such property," yet it does so subject to an express limitation that answers this motion on its own terms: "[s]uch actions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice." 28 U.S.C. § 959(a). Thus, even where § 959(a) applies, the appointing court retains full equitable power to stay the action when a stay serves the ends of justice, which is exactly what a stay does here. *See Diners Club, Inc. v. Bumb*, 421 F.2d 396 (9th Cir. 1970). The statute therefore does not strip this Court of the authority described above. It preserves it.

C. Continuing the stay is appropriate at this time.

33. In deciding whether a receivership stay should be lifted, many federal courts apply the three-factor test articulated in *SEC v. Wencke* (*Wencke II*), 742 F.2d 1230, 1231 (9th Cir. 1984): (1) whether refusing to lift the stay preserves the status quo or whether the movant will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion from relief is made; and (3) the merit of the movant's underlying claim. *See Order at 4-8, SEC v. Stanford Int'l Bank Ltd., et. al.* No. 3:09-cv-00298-N, (N.D. Tex. Mar. 8, 2010) (Dkt. No. 1030) (applying the *Wencke* factors and continuing the stay); *Rishmague v. Winter*, No. 3:11-

CV-2024-N, 2014 WL 11633690 (N.D. Tex. Sept. 9, 2014) (same). All three factors favor continuing the stay here.

34. The *Wencke* factors require a balancing of the Receiver's interests and the interests of the moving party. *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Circ. 1985). As to the first factor, permitting the Young Action to proceed would threaten to disrupt the status quo of the receivership.

35. The Receiver is investigating whether there is insurance coverage for the asserted claims. The Facilities are operating at a loss, the collateral is worth less than the liens against it, and any judgment Mr. Young might obtain would be junior to the liens already encumbering all the Receivership Estate assets and uncollectible from the Receivership Estate — so a stay works no substantial injury to the plaintiff's ultimate recovery.

36. Permitting the Young Action to proceed, by contrast, would divert the Receivership Estate's limited revenues from the operation and stabilization of the two other Facilities, Callington and Carlyle, to the cost of litigation and indemnity, leaving fewer assets for continued operations necessary to preserve the value of the Receivership Estate and distribution to creditors. *Cf. Zacarias*, 945 F.3d at 900–901 (every dollar spent on satellite litigation is a dollar unavailable to the receivership). Maintaining the stay of proceedings avoids a disorderly race to the Receivership Estate's assets and

preserves the receivership's core function of coordinating the competing interests of the residents and creditors and ensuring an orderly, equitable result for all, rather than a first-to-file advantage for a single claimant. *See id.* at 895–96 (a receivership exists to solve the "collective-action problem," in which a "disorderly race to the courthouse" dissipates assets through "piecemeal and duplicative litigation" and produces "vastly divergent results for similarly situated" claimants).

37. The second *Wencke* factor considers the point in the receivership at which relief is sought, and courts have recognized that even the most meritorious claim may not justify lifting a stay while the receivership remains in its early stages. *United States v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443-44 (3d Cir. 2005). What counts as "early" is inherently case specific, and courts have found the standard satisfied anywhere from a few months to many years into a receivership. *Id*. at 450. By any measure, this receivership sits at the front end. The Receiver has yet to commence a process to sell the Facilities and has not initiated a claims process for unsecured creditors. As stated above, the Receiver does not believe that the assets of the Receivership Estate will be sufficient to satisfy claims of the creditors already holding perfected liens on the Receivership Estate assets, which total in the aggregate more than

$150,000,000. As a result, a claims process for unsecured creditors will likely not be necessary.

38. The Receiver was appointed only in December 2025 and has spent the intervening months confronting the deep physical distress it inherited, not problems of its own making. The Facilities came into the estate with deferred maintenance and hazardous conditions, including structural deterioration, mold and water intrusion, fire safety deficiencies, and unsecured vacant units, and with five Buckingham buildings already slated for demolition. Since its appointment, the Receiver has worked, within its capital constraits, to mitigate those preexisting conditions and stabilize the Facilities, relocating tenants from unsafe units, making repairs where and when feasible, and responding to the City's condemnation and order to vacate. Thus, a stay is most clearly warranted at precisely this juncture, when the Receiver's attention belongs on the sale process and operations, and the diversion of the estate's limited resources to defending the Young Action would disrupt that work.

39. The third *Wencke* factor, the merit of the movant's underlying claim, likewise offers no reason to disturb the stay.

40. Every claim Mr. Young asserts against the Receiver and its employees arises from the Receiver's authorized operation and administration

of the Facilities, which is the precise conduct the Receivership Order was entered to protect. The Receivership Order expressly provides that "the Receiver and Receiver Affiliates shall be entitled to judicial immunity as provided under applicable law." (Receivership Order ¶ CC). A receiver carrying out the appointing court's mandate acts as an arm of that court and enjoys the same quasi-judicial immunity the court itself would enjoy. *See Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F.2d 599, 602–03 (11th Cir. 1985). Mr. Young's grievances go to the heart of that protected function. They concern the administration of the Receivership Estate and the distressed conditions at Buckingham the Receiver inherited. Claims aimed at conduct the Receiver undertook under and in furtherance of this Court's own Receivership Order and implicate the Receivership Estate's indemnity obligations are precisely the claims that belong before the appointing court. (Receivership Order ¶ Z). Further, the allegations in the Young Action implicate actions taken by the Contour defendants before the Receiver was appointed and the City after his tenancy was month-to-month. As a month-to-month tenant, Mr. Young's reasonable expectancy of continued occupancy was approximately thirty days, which undercuts his headline damages of loss of affordable housing. On this record, the merits give no reason to lift the stay.

At a minimum the factor is neutral and taken together the other *Wencke* factors outlined herein weigh firmly in favor of keeping the stay in place.

D. The Receiver Seeks Relief from the Appointing Court

41. Mr. Young filed a motion to stay the proceedings in Jefferson County until he has obtained relief from this Court to "maintain and prosecute" the Young Action.

42. Paragraph XX of the Receivership Order provides that this Court will retain jurisdiction to enforce this Order. The Young Action implicates, among others, the Receiver's administration of the Receivership Estate, the Receiver's indemnity, and the Receiver's judicial immunity. Paragraph LL of the Receivership Order provides that the Receiver may seek further direction from the Court on any matter related to the Receivership Order.

43. This Court is the most appropriate forum for deciding these issues and can address Mr. Young's claims in a summary proceeding.

## VI. PRAYER FOR RELIEF

WHEREFORE, the Receiver respectfully requests that the Court enter an order: (a) granting this Motion; (b) providing that this Court has jurisdiction and authority to enjoin Mr. Young from continuing to pursue his claims during the pendency of the receivership; (c) confirming that the stay and channeling injunction in Paragraphs P, Q, and BB of the Receivership Order apply to and

enjoin the Young Action; (d) staying the Young Action until the Receiver's discharge or further order of this Court; (e) directing that no party may commence or continue any action against the Receiver, the Receiver Affiliates, or the Receivership Estate other than before this Court, and only after leave is sought and granted; and (f) granting such other and further relief as the Court deems just and proper.

August 14, 2026. Respectfully submitted,

**EPSTEIN BECKER & GREEN, P.C.**

BY:*/s/ Ryan K. Cochran*
Ryan K. Cochran
Bar Number: ASB-1748-N70C
Epstein Becker & Green, P.C.
1222 Demonbreun Street, Suite 1400
Nashville, TN 37203
Telephone: 615.564.6060
rcochran@ebglaw.com

*ATTORNEY FOR COURT APPOINTED RECEIVER, FARBMAN GROUP*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have delivered a true and copy of the document, either via U.S. mail postage prepaid or via electronic mail, as follows:

Via CM/ECF:

Chris Glenos
Macy Walters
Bradley Arant Boult Commings
One Federal Place
1819 Fifth Avenue
North Birmingham, AL 35203-2104

Frank C. Galloway III
David Schoel
The Woodcrest Group, LLC
2200 Woodcrest Place, Suite 315
Birmingham, AL 35209

Via Electronic Mail:

C. David Bargamian
Kerr, Russell and Weber, PLC
500 Woodward and Weber, PLC
Detroit, MI 48266
dbargamian@kerr-russell.com

The King Firm
c/o J. Wesley Meidl
1824 3rd Ave. S
Jasper, AL 35501
wes@jasperlawyers.com
jimmy@jasperlawyers.com
hunter@jasperlawyers.com

Austin Law, P.C.
P.O. Boc 321173
Birmingham, AL 35212
Attention: Jonathan F. Austin
Sarah Rose McClure
austin@jaustinlawpc.com
rosie@jaustinlawpc.com

May Legal Group LLC
2208 University Blvd., Suite 102
Birmingham, AL 35233
Attention: Edward E. May II
mayoredmayesq@gmail.com

Richard A. Rice
115 Richard Arrington Blvd. N.
Birmingham, Alabama 35203
rrice@rice-lawfirm.com

*<u>/s/ Ryan K. Cochran</u>*
Ryan K. Cochran